No. 95,649

STATE OF KANSAS, *Appellee*, v. MORGAN WADE, *Appellant*.

(161 P.3d 704)

Opinion filed July 13, 2007.

*James Pratt*, of Monnat & Spurrier, Chtd., of Wichita, argued the cause and was on the briefs for appellant.

*Kristafer R. Ailslieger*, assistant attorney general, argued the cause, and *Phill Kline*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Morgan Wade appeals his convictions for first-degree felony murder and aggravated burglary. He contends that the jury instruction on the elements of aggravated burglary broadened the scope of the charges against him in violation of due process; that the district court abused its discretion by omitting his requested multiple-counts instruction; that the district court admitted irrelevant, unduly prejudicial sympathy evidence; and that the combination of errors deprived him of a fair trial. Finding that Wade was denied a fair trial, we reverse and remand for a new trial.

The evidence is undisputed that Wade shot and killed Kellye Juul. Wade and Juul had been romantically involved on a sporadic basis for some time. They had a child together, albeit Juul had two other children. The shooting incident was precipitated by Juul's

rejection of Wade and her threat to terminate Wade's contact with their son.

Juul and her children were sharing living space with a friend, Dale Coffman, who owned the house and who had freely given Wade access to the premises in the past. On the day of the shooting, Coffman, Juul, Juul's children, and several of Juul's nieces and nephews were on the premises.

Wade drove to the Coffman house, armed with a handgun. Upon seeing Wade's vehicle approach, Juul and the others retreated into the house and locked the doors. However, Wade was able to gain access through a bedroom window and proceed to the entry area, where Juul stood by the front door. Wade raised the handgun and fired, striking Juul in the abdomen. Wade then handed the weapon to a teenage nephew and administered first aid to Juul. When the police arrived, Wade admitted that he had shot Juul.

Emergency medical personnel responded, taking Juul first to the hospital and then to a nearby airfield for transport to a Wichita hospital. En route to the airfield, Juul died from the gunshot wound.

Wade was originally charged with aggravated burglary and first-degree premeditated murder. Eventually, the attorney general's office assumed control of the prosecution, and the case ultimately went to trial on the third amended complaint/information. That charging document alleged first-degree murder in Count 1 under the alternative theories of premeditation and felony murder. The inherently dangerous felony supporting the felony murder was aggravated burglary. Count 2 charged aggravated burglary, but failed to specify the felony Wade intended to commit upon entry into the house.

During a pretrial hearing, defense counsel advised the district court that the complaint/information was defective in failing to identify the felony which was the ulterior motive for the accused's unauthorized entry. The State responded by clarifying that the intended felony was first-degree murder. Subsequently, the State's initial proposed instruction on the elements of aggravated burglary identified the underlying intended felony to be first-degree premeditated murder.

In his proposed instructions, Wade requested a multiple counts instruction as set forth in PIK Crim. 3d 68.07. The instruction was not included in the final instructions given to the jury.

At trial, Wade defended on two bases. First, he contended that his entry into the house was not unauthorized because Coffman had previously given Wade free access to the premises. Second, Wade claimed that he did not intend to actually shoot Juul. He testified that another paramour of Juul's had successfully kept her in that relationship by utilizing physical intimidation. Therefore, Wade intended to scare Juul with the gunshot, but she accidentally moved into the line of fire.

After the close of the evidence, the State moved to amend the complaint/information to add aggravated assault as an alternative predicate felony for both the felony murder and aggravated burglary charges. Apparently, the district court did not amend the charging document, but permitted the elements instruction on aggravated burglary to read that the defendant made an unauthorized entry into the house "with the intent to commit a felony therein, first degree premeditated murder or aggravated assault." The instruction included the elements of aggravated assault. The proposed felony-murder elements instruction was not changed and included the claim that "the killing was done while in the commission of a felony, aggravated burglary."

During deliberations, the jury presented the trial court with three questions, which the trial court recited as follows:

"Question number one. Some jurors are not comfortable discussing the theories of murder one in order to decide if this is murder one, but we cannot decide and vote on it if it's murder one if we can't discuss it. Please clarify this for us. Some are saying that instruction 18 keeps us from discussing the theories, which tells them to discuss the theories.

"Question two. Some jurors fear that murder one is always premeditation. Felony murder would have to include this. Please clarify.

"Three, there is also concern about instruction 16 point three. There is concern about premeditation and intent under felony murder. Is felony murder considered premeditation? At what point do you wish us to move on if we cannot decide on first degree? Do intent and premeditation have to be a point of first degree murder?"

The jury was brought back into the courtroom, and the judge discussed the questions with the jury, with six of the jurors participating in the discussion, as follows:

"THE COURT: All right, Ladies and Gentlemen, who's the foreperson? They need to sign any more communications with me.

"JUROR HADLEY: I am. Jim Hadley.

"THE COURT: What's the last name?

"JUROR HADLEY: Hadley. H-A-D-L-E-Y.

"THE COURT: Okay. Well, I've got your questions. I'm a little bewildered. It's hard for me to understand them, because the answers to each of your questions are found within the instructions, themselves. But your first one concerns me. It says, some jurors are not comfortable discussing the theories of murder one in order to decide if this is murder one. What does that mean, Jim?

"JUROR HADLEY: Some people thought the way they read the instructions that they had to decide on first degree murder without considering the fact that they could go with felony murder or premeditated murder, and so on those conclusions, they just wouldn't—wasn't willing—they thought they were voting on something that they hadn't got to examine all the evidence, or all the possibilities. It wasn't my opinion, but some people were having a problem with that.

"THE COURT: Let me see if I understand this.

"JUROR HADLEY: Did I say it correctly?

"JUROR CLAPP: The first couple of lines, yeah.

"JUROR HADLEY: If somebody else wants to explain it, they're more than welcome.

"JUROR FORD: On page 18 of the instructions, Your Honor, it states that first you shall consider whether the Defendant is guilty of murder in the first degree. If the Defendant is guilty of murder in the first degree, the presiding juror shall sign the applicable verdict form, and in addition, you shall then determine the alternative theory or theories contained therein. My interpretation of that is that we don't do the theories if we don't have a group that says—12 people that say he is guilty of first degree; is that correct or incorrect?

"MR. ROGERS: That's true.

"THE COURT: The first thing you need to do is decide unanimously if the State's proved its burden beyond a reasonable doubt for murder in the first degree, all right? It can be either one of the two theories, and then you simply designate which one of the two theories, or the third theory, if you cannot totally agree on one that you accept, all right? If you come to the premise that—that murder in the first degree has not been committed, then you move on to second degree murder. Okay. Yes, ma'am.

"JUROR KINCAID: My question then is, in my mind, to define what first degree murder is, I need to look at what the theories are to define that. Some people are not willing to discuss those theories, because they think we have to vote on what murder one is first. Well, how can I vote on it if I can't discuss what the theories are?

"THE COURT: Well, it all has to be discussed together.

"JUROR KINCAID: And so we can discuss the theories?

"THE COURT: Obviously.

"JUROR KINCAID: Okay. Thank you.

"JUROR HORST: Judge, is felony murder also considered premeditated?

"THE COURT: Well, I can't—the books are closed. I can't explain—I can't add any information to what we've already presented, all right, but the answer to that question is in the instructions. The instructions say, and I'll read them to you. Let's go to intruction 18. Now, your question was, is felony murder first degree murder?

"JUROR HORST: Is it premeditated murder.

"THE COURT: Well, look at your verdict form. Let me do this. Before you do that, look at instruction 11. Elements one, two, and three. Murder in the first degree. Element one, that the Defendant intentionally killed Kellye Juul. Two, that the killing was done with premeditation. Three, that it occurred on the 19th of June, okay? All right, look at 12. The Defendant is charged in Count I in the alternative with the crime of murder in the first degree, felony murder. The Defendant pleads not guilty. To establish this charge, each of the following claims must be proved. One, that the Defendant killed Kellye. Two, that the killing was done in the commission of a felony, and, three, that this act occurred on the 19th day of June, 2004. Premeditation is not there.

"JUROR HORST: But it's still first degree.

"THE COURT: That's what 18 tells us. It's still first degree. There's two theories, okay?

"JUROR KINCAID: I see.

"THE COURT: As far as time's concerned, it's up to you, but as far as first degree is concerned, you can't discuss it without discussing the theories, because that's the heart and soul of the charge, okay? And then if you can't come to an agreement, I can't tell you whether it should take 10 minutes or 10 hours. You all are going to have to—you know, you'll get to know each other pretty well back there, and you'll know when—when someone isn't—is going to stand by their convictions and isn't going to budge, and then move on to second degree, okay? There's no set limit. It's when you feel, knowing each other the way you will, in your heart, that you're wasting your time discussing theories one and two, and first degree murder, let's move on, okay? So that pretty much takes care of one and two.

"JUROR: I think that's everything, Your Honor.

"THE COURT: That takes care of one, two, three, four—now, the final one, I think we pretty much answered that, do intent and premeditation have to be part of first degree murder, right?

"JUROR HEMPEL: Felony murder. I think the question was supposed to be is intent and premeditation part of the felony.

"THE COURT: Well, read instruction number 12. You read instruction number 12, and the answer's right there. One, two, and three, okay? And then you can read instruction number 11 to see the other side. The answer's just as plain as day right there. All of these questions, and I don't want you to think that I'm PO'd or anything like that or ever not encouraging you to write questions, but you need

to understand up front that the—basically, other than what we've talked about trying to get you oriented about how to discuss the charge, you know, what kind of a framework you discuss the charge, try to help you there, although, that is in instruction 18, but most of the answers to your questions, I'll tell you up front, are going to be referring you back to the instructions. That's your Bible, so to speak, and the answers are normally there, if you look hard enough, and you can— you can start with instruction 11, and you really only have about six instructions that are important. The rest of them are just preliminary stuff, but starting with instruction 11 is the premeditated murder instruction on first degree. 11 through 18 are the instructions that you really have to worry about that tell you what to do, what the elements of the charge are, and they're the ones when you come back with a question that I'm going to refer you back to read.

"I'm not saying—in saying that, I'm not telling you don't send me any questions, because I'm just going to send you back in there to read the instructions, but I'm trying to tell you that, you know, try real hard to see in those five instructions whether you can find your answer before you come out here. Okay, anything else?

"(NO RESPONSE.)

"THE COURT: Okay. We'll be in recess."

The verdict form for Count 1, first-degree murder, gave the jury three options to find the defendant guilty: (1) unanimously on the theory of premeditated murder (Theory 1[a]); (2) unanimously on the theory of felony murder (Theory 1[b]); or (3) being unable to agree on the first two theories, unanimously on the combined theories of premeditated murder and felony murder (Theory 1[c]). The jury unanimously found Wade guilty under the felony-murder theory. The jury also found Wade guilty of aggravated burglary, albeit the verdict form did not require a designation of the underlying intended felony.

## ELEMENTS INSTRUCTIONS

Wade first contends that the district court's elements instructions broadened the scope of the felony murder and aggravated burglary charges and deprived him of notice and a fair opportunity to prepare his defense, i.e., denied him due process. His specific complaint is the addition of aggravated assault as an alternative ulterior intended felony in the elements instruction for aggravated burglary, which he contends permitted the State to pursue a theory of guilt which was not alleged in the clarified amended complaint/ information. Further, because the felony-murder elements instruc-

tion, Instruction No. 12, referred the jury to the elements instruction for aggravated burglary, Instruction No. 16, Wade contends that the defective Instruction No. 16 invalidated his felony-murder conviction.

Ordinarily, when a defendant objects to the jury instructions, we look to whether the instructions properly and fairly state the law as applied to the facts of the case and could not have reasonably misled the jury, even if they may be erroneous in some way. See *State v. Edgar*, 281 Kan. 47, 54, 127 P.3d 1016 (2006). However, here, the gravamen of Wade's complaint is a constitutional due process challenge, for which we exercise unlimited review. See *State v. Murry*, 271 Kan. 223, 224, 21 P.3d 528 (2001).

Both parties make certain concessions. The State agrees that the initial charging document was defective in omitting the intended felony upon which the aggravated burglary charge was predicated. See *State v. Lora*, 213 Kan. 184, 187-88, 515 P.2d 1086 (1973) ("An information charging burglary is defective in form unless it specifies the ulterior felony intended by an accused in making the unauthorized entry."); *cf. State v. Linn*, 251 Kan. 797, Syl. ¶ 2, 840 P.2d 1133 (1992) ("An instruction as to the offense of aggravated burglary is defective unless it specifies and sets out the statutory elements of the offense intended by an accused in making the unauthorized entry.").

Wade acknowledges that the prosecutor cured the complaint defect by advising the court and the defense prior to trial that the State was relying on first-degree premeditated murder as the offense Wade intended to commit when he made unauthorized entry into the house. See *Lora*, 213 Kan. at 188-89 ("If the ulterior felony intended in a burglary is made clear at the preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error.").

The State also acknowledges that the aggravated burglary instruction was "technically in error" for violating the general rule that instructions should not be broader than the information. See *State v. Turbeville*, 235 Kan. 993, 997, 686 P.2d 138 (1984). However, the State seeks to excuse the violation by convincing us that

Wade's substantial rights were not prejudiced. See *Turbeville*, 235 Kan. at 997 ("Instructions given in violation of the rule, however, have been excused in cases where the substantial rights of the defendant have not been prejudiced.").

Thus, we are presented with an erroneous jury instruction on the elements of aggravated burglary. Now, we must decide whether to excuse the error in order to affirm Wade's conviction for aggravated burglary, and further decide how the error impacts the felony-murder conviction. As the State acknowledged at oral argument, our precedent on felony-murder instructions suggests the rather troubling irony that the State had a stricter obligation to advise Wade of its prosecution theory on the burglary charge than it had on the first-degree murder charge. Therefore, we will look at each charge separately.

*Aggravated Burglary*

The question of whether Wade's aggravated burglary conviction must be reversed rests solely on our determination of whether his substantial rights were prejudiced by the erroneous instruction. We answer that question by finding sufficient prejudice to preclude excusing the error.

The State informed Wade, as well as the district court, that it would prove that Wade committed aggravated burglary by making an unauthorized entry into Coffman's house with the premeditated intent to kill Juul. The State tried the case on that basis.

Wade prepared for trial and presented his defense with the understanding that he could obtain an acquittal on the aggravated burglary charge if he convinced the jury that he did not have a premeditated intent to kill Juul when he entered Coffman's house. Wade made the critical decision to testify at trial, based upon everyone's understanding of what the State had assumed the responsibility of proving. The modified instruction permitted by the trial court relieved the State of its obligation to prove a premeditated intent to kill as an element of aggravated burglary. Rather, the State could meet its burden by convincing the jury that Wade entered the Coffman house with the intent to scare Juul with the handgun, which, of course, was exactly what Wade had admitted

on the witness stand. In other words, the erroneous instruction, adding aggravated assault as an alternative ulterior felony, transformed Wade's defense testimony into an after-the-fact confession.

The State reviews a number of cases and suggests that they indicate "that prejudice will not be found where the challenged instructions are supported by the evidence, do not charge an additional crime, do not surprise the defendant, and do not mislead the defendant in the preparation of his defense." Where the State falters is in its assessment of the surprise and misdirection created by the erroneous instruction.

The State contends that Wade should have known "that other felonies, if supported by the evidence, could have supported the charge" of aggravated burglary. While Wade's attorney may well have been aware that the case could have been charged differently, the State has acknowledged that the law requires the charging document to identify the felony which is alleged to support the burglary charge. We do not make one accused of aggravated burglary speculate on the State's theory of guilt.

The State's argument that Wade should have known that an amendment to the charging document might be forthcoming strikes us as circular. K.S.A. 2006 Supp. 22-3201(e) allows for a complaint amendment only where the defendant's substantial rights are not prejudiced. Therefore, the State's argument appears to be that Wade was not prejudiced because he should have known that an amendment was possible if he was not prejudiced.

Likewise, we reject the State's assertion that Wade could not have been surprised by the amended instruction, and in fact invited it by providing the testimony that supported aggravated assault as the ulterior felony. Apparently, the State believes that a criminal defendant must foresee and assume the risk that a trial judge will sanction an erroneous jury instruction. To the contrary, a defendant should be permitted to rely on the premise that the jury instructions will comport with the notice requirements of due process.

Further, we are not persuaded by the State's attempt to refute that Wade's decision to testify was impacted by the error by contending that Wade had no choice but to testify. That assertion is

belied by defense counsel's statement at the instructions conference that adding aggravated assault to the instructions was tantamount to a directed verdict for the State and that counsel "would not have put him on had I known that were going to happen." At the very least, one cannot presume that Wade's decision to waive his Fifth Amendment rights was based on the knowledge that the district court would give an erroneous instruction, and it would be difficult to declare that waiver to be knowingly and intelligently made.

Finally, the State complains that it could not have anticipated Wade's testimony and that public policy mandates that we not allow a defendant to get away with a crime based on one predicate felony by confessing to another felony. First, one might be somewhat skeptical of the notion that a prosecutor could not anticipate a defendant declaring, "I didn't mean to do it." More to the point, however, our public policy is that the State has the burden to prove, beyond a reasonable doubt, that the defendant is guilty of the crimes charged, and the defendant carries the presumption of innocence. If the State's proof is challenged by the defendant's self-serving testimony, then it is the jury's function to weigh the evidence and assess the defendant's credibility. We do not change the rules of engagement, after the fact, to dilute the State's burden and make a conviction more likely. The integrity of the process is the cornerstone of our criminal justice system.

In summary, the instruction on the elements of aggravated burglary was erroneous in adding an ulterior felony for which the defendant had no notice prior to the completion of the evidentiary portion of the trial. The error adversely affected the defendant's ability to prepare for and present his defense and prejudiced the defendant's critical decision to waive his Fifth Amendment rights and testify. The error cannot be excused in this case. Wade's conviction for aggravated burglary must be reversed and the case remanded for a new trial.

*Felony Murder*

The State points out that the felony-murder elements instruction did not change the inherently dangerous felony identified in the

complaint/information; both named aggravated burglary as the underlying felony. Therefore, the State suggests that the instructions did not technically stray from the charging document. However, the State recognizes that the felony-murder elements instruction told the jury that "[t]he elements of aggravated burglary are set forth in Instruction No. 16" and that Instruction No. 16 was "technically in error." Wade argues that the incorporation by reference of an erroneously broadened aggravated burglary elements instruction effected an impermissible broadening of the felony-murder instruction. Wade's point is persuasive.

The State counters that, although there is no Kansas case dealing with the specific issue, the precedent dealing with felony murder is "at odds with the case law . . . regarding burglary." While an information charging burglary must specify the intended ulterior felony, *Lora*, 213 Kan. at 187-88, it is unnecessary for the State to charge or identify the elements of the underlying felony in order to convict a defendant of felony murder. See *State v. Hall*, 246 Kan. 728, 749, 793 P.2d 737 (1990). Indeed, we have found that it does not violate due process to instruct on felony murder even where the information did not charge the defendant with felony murder. See *State v. Young*, 277 Kan. 588, Syl. ¶ 5, 87 P.3d 308 (2004). The prosecutor apparently recognized the inconsistencies in the State's charging obligations when making the following argument at the instructions conference:

"Your Honor, I would be perfectly happy to abandon any request to amend the Information, itself, to include the aggravated assault as an alternative for the burglary. However, that does not impact the State's ability to proceed in the felony murder with the alternatives of first degree murder and aggravated assault as the basis for the aggravated burglary, *strictly as it relates to the felony murder.*" (Emphasis added.)

Nevertheless, the elements instruction for felony murder was not separately modified and the elements of aggravated burglary were not defined differently for purposes of the felony-murder charge. Therefore, we must consider whether the same aggravated burglary instruction can support the felony-murder conviction, while requiring the reversal of the aggravated burglary conviction.

In *Young*, the defendant shot and killed a man during a payment dispute following the delivery of crack cocaine. Young was charged with first-degree premeditated murder in connection with the dead victim. Nevertheless, on its own initiative, the trial court instructed the jury: " 'If you do not agree the defendant is guilty in count one of murder in the first degree-premeditated, you should then consider the lesser offense of murder in the first degree-felony murder.' " 277 Kan. at 592-93. The underlying felony was identified as the sale of cocaine. 277 Kan. at 596. Young did not object to the felony-murder instruction, triggering a clearly erroneous standard of review on appeal. 277 Kan. at 593; see K.S.A. 2006 Supp. 22-3414(3).

The *Young* court found that the district court had incorrectly stated Kansas law because felony murder is not a lesser included offense of premeditated murder. "In fact, felony murder and premeditated murder define the same crime—first-degree murder—committed by alternative means." 277 Kan. at 593. The court further explained that "[t]he felonious conduct proved in a felony-murder prosecution stands in for the deliberation and intent ordinarily required to be proved in a premeditated murder case." 277 Kan. at 594. Nevertheless, *Young* determined that "[t]he district court's misstatement was literally but not legally 'clearly erroneous' because the remainder of the instruction's content and its inclusion in the case were proper." 277 Kan. at 594.

*Young* specifically found no error in having the jury consider felony murder as an alternative to a premeditation theory, even though felony murder was not described in the information. In doing so, *Young* relied heavily on *State v. Foy*, 224 Kan. 558, 582 P.2d 281 (1978), declaring that the *Foy* court had "rejected the defendant's argument that the jury could not be instructed on felony murder because the charge against him had been limited to a premeditation theory." 277 Kan. at 594. To support that statement, *Young* recited the following statement from *Foy*:

" '[A]n information in the ordinary form charging that a killing was done with malice aforethought, deliberation, and premeditation is sufficient to sustain a conviction of murder in the first degree committed in perpetration of a robbery or burglary. [Citation omitted.] Therefore, the fact that felony murder was not

charged in the information does not preclude an instruction where evidence supports the instruction. [Citation omitted.]' *Foy*, 224 Kan. at 566." *Young*, 277 Kan. at 594-95.

Interestingly, however, it does not appear that Foy was actually arguing that the felony-murder instruction was precluded simply by the State's failure to separately charge felony murder. The *Foy* opinion recited the felony-murder instruction issues as follows: "The appellant now contends he was wholly without notice for his defense and the evidence at trial was insufficient to charge the jury with felony murder." 224 Kan. at 566.

The insufficiency of the evidence contention involved the question of whether the merger doctrine applied to the underlying felony of aggravated burglary where the ulterior intended felony was aggravated assault, given that aggravated assault by itself could not support a felony-murder conviction because it merged into the homicide. Inexplicably, the above *Foy* language upon which *Young* relied appeared in the *Foy* opinion immediately after the statement of the appellant's contentions and immediately preceding an analysis of the merger question. Later in the opinion, after holding that "the merger doctrine does not apply in felony-murder cases where an aggravated burglary is based upon an aggravated assault," 224 Kan. at 567, *Foy* then turned to the notice issue, as follows:

"Was the appellant without notice for his defense on felony murder? During the trial the prosecuting attorney at the close of the state's case specifically and unequivocally advised the court the state was going to withdraw its request for an instruction on felony murder. The appellant, on that assumption, then presented his evidence and rested. At the conclusion of the evidence the trial court, at the request of the prosecuting attorney, instructed the jury on felony murder, and instructed the jury that it could find the appellant guilty of felony murder. This was prejudicial to the appellant in the presentation of his evidence." 224 Kan. at 567.

Thus, *Foy* did not reject defendant's notice argument, but rather reversed on that basis. The case did not relate its recitation about a felony-murder charge being unnecessary for a felony-murder instruction to its ultimate holding reversing the conviction. In other words, *Foy* does not explain what impact, if any, the contents of the information, or lack thereof, had on its finding of prejudicial

and reversible error. Nevertheless, the quotation from *Foy*, which was cited in *Young*, was apparently, at some point, elevated to the status of the *"Foy* rule." See *Hall*, 246 Kan. at 749 ("Under the *Foy* rule, the State did not even have to charge Hall with felony murder or theft as long as it charged him with premeditated murder.").

However, *Young* recognized that the *"Foy* rule" is subject to limitations. Specifically, the defendant must not be "unfairly surprised by the prosecution's reliance on [the felony murder] theory." 277 Kan. 588, Syl. ¶ 4. *Young* was careful to point out that under the facts of that case, "it [was] evident from the record that both sides in the case as well as the district court anticipated the State's reliance on a felony-murder theory." 277 Kan. at 597.

Here, while observing that the case law on felony murder and on burglary seem to be at odds with respect to the pleading requirements, the State candidly acknowledges that "[e]ven in the felony murder cases, the Court has found error when it appeared that the substantial rights of the defendant were prejudiced." The State urges us to make a clear statement as to whether an analysis of the prejudice to a defendant's substantial rights is necessary in each case in which either felony murder or the underlying felony supporting felony murder are not charged in the complaint/information.

The answer to the State's request for clarification is rudimentary. We can all agree that a criminal defendant is constitutionally entitled to a fair trial, and that entitlement is a substantial right which is unrelated to the quantum of evidence against the defendant. *Cf. State v. Tosh*, 278 Kan. 83, 97, 91 P.3d 1204 (2004) ("Denial of a fair trial violates the due process rights of the guilty defendant just as surely as those of the innocent one."). "The fundamental requirement of due process is a fair trial in a fair tribunal. The essential elements of due process of law are notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." *In re Care & Treatment of Hay*, 263 Kan. 822, Syl. ¶ 4, 953 P.2d 666 (1998).

Obviously, trial by ambush does not comport with due process. Therefore, where a jury is instructed to convict a defendant in a

manner or upon a theory which was not identified in the charging document, an analysis of whether the defendant had sufficient notice to pass due process muster is in order. Thus, the analysis of whether Wade's felony-murder conviction can stand in the face of the erroneous aggravated burglary instruction tracks that of the aggravated burglary conviction by analyzing the prejudice to Wade's substantial rights.

When the State cured its defective amended complaint/information by notifying the court and defendant that the aggravated burglary charge was based upon an intended ulterior felony of premeditated first-degree murder, it assumed the burden of proving premeditation as an element of first-degree murder under either of the alternative means. To prove premeditated first-degree murder, the State had to prove that Wade had a premeditated intent to kill Juul when he discharged the firearm. To prove felony murder, the State had to prove that Wade had a premeditated intent to kill Juul when he made the unauthorized entry into Coffman's house.

Thus, Wade could prevail on the charge of first-degree murder, either premeditated or felony murder, by convincing the jury that he never "formed the design or intent to kill before the act." PIK Crim. 3d 56.04(b) (defining premeditation). Therefore, our above analysis of the prejudice visited upon Wade by the erroneous aggravated burglary instruction applies equally to his felony-murder conviction. His ability to prepare and present a defense and his decision to waive his Fifth Amendment rights were compromised.

Furthermore, our confidence in the jury's verdict is shaken by the colloquy between the court and six of the jurors, which disclosed a confusion as to whether premeditation was an element of the felony-murder charge. That confusion was not clarified by the district court's response. To the contrary, after paraphrasing the elements of felony murder, the district court declared: "Premeditation is not there." In fact, premeditation was there. *Premeditated* first-degree murder was an alternative element for the underlying felony of aggravated burglary, upon which the felony murder was based, *i.e.*, premeditation was an element of felony murder under one of the State's theories.

Wade is entitled to a new trial on the first-degree murder charge, as well as the aggravated burglary charge.

*NEW TRIAL*

Ordinarily, when a defendant's convictions are set aside on appeal on any ground other than the insufficiency of evidence to support the verdict, a retrial is permissible without offending double jeopardy principles. K.S.A. 21-3108(4)(c); *United States v. Scott*, 437 U.S. 82, 90-91, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978). However, a defendant may not be subjected to a second trial after an acquittal on the charges in the first trial. K.S.A. 21-3108(1)(a).

Wade states that the jury explicitly acquitted him of premeditated murder and impliedly acquitted him of felony murder and aggravated burglary based upon the underlying felony of premeditated murder, which were the only charges set forth in the clarified amended complaint/information. Therefore, he argues that he cannot be retried without running afoul of double jeopardy.

The fallacy in Wade's reasoning is that the verdict form does not tell us that the jury *acquitted* him of premeditated murder, *i.e.*, unanimously found him not guilty under Theory 1(a) of the verdict form. Rather, we simply know that all 12 jurors agreed that Wade was guilty of first-degree murder by the alternative means of felony murder under Theory 1(b) of the verdict form. That unanimity excludes the combined theory set forth in Theory 1(c) of the verdict form, because the combined theory only comes into play if the jury cannot agree on either the premeditated or the felony-murder theories. However, unanimity on felony murder does not necessarily mean that all 12 jurors were likewise unanimous in voting not guilty of first-degree premeditated murder. It is just as likely that one or more of the jurors voted for guilt under both the premeditated and the felony-murder theories. That is especially so, given that the State included a premeditation element in both alternative means. For example, a juror finding that Wade had a premeditated intent to kill Juul both when he entered the house and when he discharged the firearm would have been informed by the instructions that Wade had committed first-degree murder under both the premeditated and felony-murder theories.

Contrary to Wade's assertion, the verdict forms do not establish that the jury acquitted Wade on the premeditated first-degree murder charge. Without an acquittal, double jeopardy does not apply. The case is remanded for a new trial on the first-degree murder charge.

### MULTIPLE-COUNTS INSTRUCTION

Wade submitted proposed jury instructions which included a multiple-counts instruction based upon PIK Crim. 3d 68.07, and read as follows:

"Each crime charged against the Defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime must be stated in a verdict form signed by the Presiding Juror."

The court failed to include the instruction in its charge to the jury, albeit, at the instructions conference, Wade did not make a specific argument on the proposed instruction or object to its omission. Notwithstanding the absence of any objection at the instructions conference, the State concurs with Wade's proffered review standard from *State v. Pabst*, 273 Kan. 658, 666, 44 P.3d 1230, *cert. denied* 537 U.S. 959 (2002), *i.e.*, "whether the instruction given without the additional requested language properly and fairly stated the law as applied to the facts of the case and whether the instruction given reasonably could have misled the jury."

We are unpersuaded by the State's arguments that the jury could not have been misled because it was given a separate instruction for each count; it was given a separate verdict form for each count; and it was clear that each count was to be considered separately. To the contrary, the jury was not given completely separate instructions on each count. Instruction No. 11 contained the elements of premeditated first-degree murder, but that crime was also stated as an alternative element of aggravated burglary in Instruction No. 16, thereby interrelating those two instructions. Instruction No. 12 on felony murder specifically sent the jury to Instruction No. 16 for the elements of aggravated burglary, which instruction also listed the elements of aggravated assault. Instruction No. 13 ref-

erenced Instruction Nos. 11, 12, and 14. Instruction No. 18 referred the jury back to Instruction No. 14.

The manner in which the State charged the crimes and the liberal use of incorporation by reference in the various "separate" instructions presented a case in which a multiple counts instruction was highly desirable, if not absolutely necessary. As noted, the record suggests that the jury was confused by the interplay between the separate crimes and needed direction. Upon retrial, the jury should be given the multiple counts instruction.

## ADMISSION OF EVIDENCE

The State presented the testimony of an EMT who responded to the shooting scene and accompanied Juul to the hospital and then to the airfield. The EMT was personally acquainted with Juul. Wade complains that the testimony was too dramatic, given the EMT's prior personal involvement with the victim. He also mentions that the testimony was unnecessary to prove the fact and cause of death because there were other witnesses to establish those facts.

Wade focuses on the propriety of the trial judge's admission of the evidence, rather than the legal basis upon which the judge found the evidence admissible. Therefore, we review for an abuse of discretion. See *State v. Gunby*, 282 Kan. 39, 47-48, 144 P.3d 647 (2006); *State v. Holmes*, 278 Kan. 603, 623, 102 P.3d 406 (2004).

Wade attempts to equate the EMT's testimony with the type of immaterial and inflammatory testimony held to be reversible error in *State v. Kunellis*, 276 Kan. 461, 78 P.3d 776 (2003); *State v. Carter*, 270 Kan. 426, 14 P.3d 1138 (2000); and *State v. Donesay*, 265 Kan. 60, 959 P.2d 862 (1998). However, those cases are distinguishable in that they involved witnesses who were not testifying as eyewitnesses to a material fact of the crime. Here, the State was required to prove the fact and manner of Juul's death, and the EMT's testimony was relevant and material in accomplishing that goal. See *State v. Gholston*, 272 Kan. 601, 613, 35 P.3d 868 (2001), *cert. denied* 536 U.S. 963 (2002) (holding that even where the defendant concedes the cause of death, the prosecutor has the

burden to prove all the elements of the crime charged, and evidence including the fact and manner of death and the violent nature of the crime are relevant and admissible). The district court did not abuse its discretion in permitting the testimony.

## CUMULATIVE ERROR

Finally, Wade asserts that the totality of the circumstances substantially prejudiced him and denied him a fair trial. See *State v. Ackward*, 281 Kan. 2, 29, 128 P.3d 382 (2006) (stating standard of review for cumulative error). Given that we have not declared the trial errors to be harmless, we need not address Wade's arguments on this issue.

Reversed and remanded for a new trial.