NOT DESIGNATED FOR PUBLICATION

No. 118,965

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRIAN WILLIAM LUEBBERT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed January 10, 2020. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., STANDRIDGE and WARNER, JJ.

PER CURIAM: Brian Luebbert appeals several convictions involving an episode of domestic violence against his now ex-wife. Luebbert argues that errors in the charging documents and the admission of evidence require reversal. We disagree and affirm.

FACTUAL BACKGROUND

Luebbert's convictions stem from an incident at the home of Heidi Black, Luebbert's now ex-wife. Luebbert and Black had a volatile relationship that included numerous episodes of domestic violence dating back several years. These episodes

invariably consisted of some form of physical altercation, usually Luebbert beating and/or strangling Black and the police arresting Luebbert. Luebbert's history of domestic violence against Black played a prominent role at his trial.

On the evening of September 14, 2016, a Salina police officer arrived at Black's house in response to a domestic violence call. Black informed the officer that her husband had severely beaten her and then fled. Although Black had recently dismissed a protection from abuse order—obtained because of the ongoing pattern of abuse, violence, and threats from Luebbert—there were several no-contact orders from other cases in place at the time of the incident. Even so, Black and Luebbert were still legally married and had been in regular contact, ostensibly trying to make things work between them.

According to Black's testimony, her statements to police, and reports to emergency room staff, the September 14 incident began when Luebbert showed up at her house and began rifling through her car. Black demanded Luebbert leave and reminded him that he was not allowed to be near her or on her property. Black threatened to call the police, but Luebbert forcefully grabbed her cell phone and ran into her house. Luebbert told her he was going to go get their kids.

Black chased Luebbert into the house and ran toward the home phone to call the police. Luebbert told her that she was not going to call the police on him again, and the two began struggling. Luebbert forcefully took the home phone from Black and threw it across the room; he began hitting and strangling Black and forced her into the bathroom.

Black testified that once they were in the bathroom, she was "knocked down repeatedly into the bathtub and [her] head hit the—the cross bar or the handicapped railing. [She] had water sprayed on her face, while [Luebbert] choked [her] and covered [her] mouth." After Black fell into the bathtub, Luebbert knelt on her chest and held her head under the running faucet while continuing to hit her in the face. Black later told an

2

emergency room nurse that she could not breathe and felt like she was being water-boarded. At some point during the beating, Luebbert bit Black on the face.

Black pleaded with Luebbert to leave, but he replied that "he wasn't going to leave" and "that [she] wasn't going to leave the bathroom alive, if [she] didn't take him back." Luebbert continued to choke and beat Black; he then began to kick her and stomp on her knee and chest. In an attempt to free herself, Black tried to set off her car alarm with her keys and stabbed Luebbert with them. Luebbert threw her against the wall, breaking the towel rack, and then took her keys and flushed them down the toilet.

During the episode, Luebbert would periodically stop beating Black, and she would beg him to let her leave. He repeatedly refused. Black believed that she was trapped in the bathroom between one and two hours.

Eventually, Luebbert calmed down, and Black persuaded him to let her out of the bathroom. While Luebbert walked toward the kitchen, Black picked up the home phone from the ground where Luebbert had thrown it. As she began to call the police, Luebbert tackled her and tried to grab the phone, but Black threw it across the room. Luebbert went after the phone, and Black ran out the front door to get help. Luebbert left, taking Black's cell phone with him. Later, the police and paramedics arrived and took Black to the hospital.

Luebbert testified to his recollection of the events that evening. Luebbert claimed he did not punch Black in the face, stomp on her chest, choke her, or even threaten her. And Luebbert alluded to Black being the aggressor, stating that she had pushed him, causing her to fall backwards into the bathtub and knocking the shower rod onto her head. Luebbert testified that he tried to help Black up, but she tried to stab him with her car keys, so he yelled at her and turned on the shower because he was angry. Luebbert also claimed that Black attacked him with the towel rod and tried to bite him. Luebbert

3

testified that after they left the bathroom, Black called the police with the home phone, threw it at him, and yelled, "Have fun in jail, fucker!" Luebbert's version of events centered on him defending himself against Black, who had lost her temper.

The emergency room doctor who examined Black found she had an abrasion on her back, tenderness in her shoulder, and petechiae—little microbursts of blood—in her eye. The doctor's impression was that Black had been manually strangled and had suffered a head injury. The emergency room nurse who performed a sexual-assault examination (SANE/SART) documented Black's injuries in detail, noting multiple hemorrhages; petechiae in her eyes and mouth; bruising around her eyes; bruising and a hematoma on her arms; an abrasion on her right knuckle; and general redness on her nose, chin, neck, head, and back. Black told the nurse that her vision had jolted in and out and she felt like she was going to pass out at multiple times during the beating.

Black testified that Luebbert repeatedly told her he would kill her and while strangling her in the bathroom said, "[W]hy won't you die, just die already." Similarly, the nurse's report indicated Black told her, "'He threatened to kill me several times, said it would be worth going to prison to watch me bleed out. He kept pushing his forehead into my face, while he had me against the wall.' He said, 'I'm going to kill you bitch.'"

The State initially charged Luebbert with attempted second-degree murder, aggravated kidnapping, aggravated battery, criminal threat, criminal damage to property, stalking, aggravated burglary, and robbery. After the State filed the initial information, Luebbert left Black's cell phone and a note in her mailbox, which read:

"WTF, attempted murder? This shit has gone way too far. Yesterday we were fine and all this shit over a bath towel. We've been doing great and getting along[.] . . . WTF, call them off[.] . . . This is bullshit and you know it[.] . . . All of this has gone too far. Fix it. Please, I just want to be able to be my kids' father. Call them off please."

As a result of this note and other contacts, the State filed an amended information adding a count of intimidation of a witness.

In the months before trial, the State filed a motion under K.S.A. 60-455, seeking permission to introduce evidence of numerous episodes of Luebbert's previous domestic violence to show motive and marital discord. The State also filed a second amended information, adding two counts of violations of protective orders.

The case proceeded to trial. At the close of its case-in-chief, the State moved to amend the information a final time to correct the charges for violations of protective orders to conform to the evidence. Luebbert did not object.

The jury found Luebbert guilty of attempted second-degree murder, aggravated kidnapping, aggravated battery, criminal threat, criminal damage to property, stalking, aggravated burglary, robbery, and intimidation of a witness, and found he had violated protective orders on September 14 and 15, 2016. The district court sentenced Luebbert to the standard sentence on each charge for a controlling sentence of 342 months in prison. Luebbert appeals, claiming errors in the charging documents and in the admission of evidence warrant reversal.

DISCUSSION

1. *Errors Alleged in the Charging Documents*

K.S.A. 22-3201(b) requires a "complaint, information or indictment" to state the "essential facts" constituting the crime charged; such a charging document "shall be deemed sufficient" if its language is "drawn in the language of the statute." The Kansas Supreme Court has interpreted this statute to require charging documents to "allege[]

5

facts that would establish the defendant's commission of a crime recognized in Kansas." *State v. Dunn*, 304 Kan. 773, 811-12, 375 P.3d 332 (2016).

Luebbert alleges the information and its various amendments filed by the State failed to provide him with sufficient notice of the basis for the attempted second-degree murder, aggravated burglary, and violation of a protective order charges. We review claims regarding the sufficiency of the language of such documents de novo, as we are in as good a position as the district court to consider that language and compare it to the statutory elements of the crime charged. 304 Kan. 773, Syl. ¶ 6.

*First*, Luebbert contends the information omitted any allegation of a specific overt act for attempted murder—other than his attempt to kill Black—and thus did not inform him of the nature of the allegations against him. See K.S.A. 2018 Supp. 21-5301(a) (defining an attempt as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime"). But Kansas courts have found this same overt-act language—that the accused attempted to kill a human being—sufficient to provide notice in the context of other attempted-murder charges. See *State v. Humphrey*, 252 Kan. 6, 28, 845 P.2d 592 (1992); *State v. Sweat*, 30 Kan. App. 2d 756, 761-72, 48 P.3d 8 (2002) (finding no error in charging document relating to attempted first-degree murder). We similarly find no error here in the attempted second-degree murder charge.

*Second*, Luebbert argues errors in the charges that he violated protective orders on September 14 and 15, 2016—the dates of the fateful incident and his subsequent contact with Black. He claims that the charging documents allege violations of Salina Municipal Court orders, but the evidence at trial showed he violated protection from abuse orders issued by the district court. The State claims the third amended information's reference to the municipal court was a typographical error that neither party recognized before the case was on appeal.

After the close of the State's case, Luebbert moved for judgment as a matter of law on all charges, claiming that the evidence failed to support any of the crimes charged. The district court denied his motion as to all counts in the second amended information except Counts 10 and 11, the two violations of protective orders. The court then expressed concern that the information contained in those charges did not reflect the evidence presented at trial:

"[I]n Counts 10 and 11, the way you have this, the violations of protective order currently charged out it alleges in violation of a protection from abuse order entered under the PFA statutes by Salina Municipal Court, which there is no PFA from order from . . . Salina Municipal Court. There are bond conditions issued by municipal court. Do you have a motion to make or do you want me to direct a verdict throwing those two counts out, because there is no such order?"

The court indicated that it would take Luebbert's motion under advisement with regard to Counts 10 and 11 as the State considered its choices. The State then moved to amend the charging documents to conform to the evidence; Luebbert raised no objection. Thus, the court granted the State's motion to amend its information to conform to the evidence presented—which included violations of the district court's protective orders on September 14 and 15, 2016—and the court denied the remainder of Luebbert's motion for judgment as a matter of law.

Despite this discussion, the third amended information the State later filed continued to include language regarding protective orders from the municipal court. No one raised these issues before the district court, either at trial or in later briefing when Luebbert unsuccessfully moved for a new trial. Instead, Luebbert raises the issue for the first time on appeal, claiming the third amended information is defective and requires reversal of his two convictions for violation of a protective order.

7

Absent extraordinary circumstances, we do not consider arguments regarding defective charging documents for the first time on appeal. Indeed, the Kansas Supreme Court explained in *Dunn* that "[o]ur usual rules apply to charging document challenges by criminal defendants. They should be raised in the district court in the first instance. If they are not, defendants will be tasked with demonstrating on appeal that an exception to the usual preservation rule should be applied." 304 Kan. at 819. This court will not consider new issues on appeal unless (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the claim's consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court's judgment may be upheld on appeal despite its reliance on the wrong ground or reason for its decision. 304 Kan. at 819.

Luebbert does not explain why this court should review this new argument, nor why the technical defect in the charging document filed should void his consent at trial to the State's motion to conform the information to the evidence presented. Accord *State v. Loeffler*, No. 117,782, 2018 WL 3595986, at *4-5 (Kan. App. 2018) (unpublished opinion) (allowing the State to correct error in the charging document after conviction that referenced marijuana instead of methamphetamine), *rev. denied* 309 Kan. 1352 (2019); *State v. Gaines*, No. 89,897, 2004 WL 421974, at *1 (Kan. App. 2004) (unpublished opinion) (allowing the State to correct error in the charging document after conviction that referenced the wrong type of correctional facility from which the defendant escaped). And to the extent Luebbert's argument can be liberally construed as a challenge to the sufficiency of the evidence presented, we note the State presented evidence that Luebbert was subject to two protection from abuse orders from the district court and that he violated those orders in his subsequent interactions with Black on September 14 and 15, 2016. We find Luebbert has failed to allege error as to Counts 10 and 11.

*Third*, Luebbert argues the charging documents were defective because they did not enumerate the ulterior felonies in the aggravated burglary charge. See *State v. Lora*, 213 Kan. 184, 187-88, 515 P.2d 1086 (1973) ("An information charging burglary is defective in form unless it specifies the ulterior felony intended by an accused in making the unauthorized entry."). There is no question that in each version of the information filed, the aggravated burglary charge alleged that Luebbert entered Black's house "with the intent to commit a felony therein" without specifying which felony he intended to commit. The ulterior felonies the State ultimately relied upon—attempted second-degree murder, aggravated kidnapping, aggravated battery, and criminal threat—were first listed in the State's proposed jury instructions. Luebbert claims this court should reverse his conviction for aggravated burglary under *State v. Wade*, 284 Kan. 527, 161 P.3d 704 (2007), since he was not apprised of the ulterior felonies the State intended to pursue until the instructions conference.

But *Wade* did not hold that failure to include an ulterior felony in a burglary charge automatically compels reversal. Instead, *Wade* explained that "the failure to specify the ulterior intended felony in a burglary information *will not constitute reversible error if the defendant was provided adequate notice* of the alleged ulterior felony before trial." (Emphasis added.) 284 Kan. 527, Syl. ¶ 2; see also *Lora*, 213 Kan. at 188-89 ("If the ulterior felony intended in a burglary is made clear at the preliminary hearing or by the context of the other charge or charges in the information the failure to allege the specific intended felony does not constitute reversible error.").

In *Wade*, the defendant was charged with felony murder and aggravated burglary. The only ulterior felony noted in the aggravated burglary charge was murder; the State never gave the defendant any indication it intended to pursue aggravated assault as an individual charge or as an ulterior felony for burglary. The defendant therefore testified he was only attempting to scare the victim—that he did not have a premeditated intent to kill when he entered the house. After the close of evidence, the State added aggravated

assault as an alternative ulterior felony in the jury instruction for burglary. Under these circumstances, *Wade* found the addition of aggravated assault at the last minute "adversely affected [the defendant's] ability to prepare for and present his defense and prejudiced [his] critical decision to waive his Fifth Amendment rights and testify." 284 Kan. at 537.

Luebbert suffered no similar prejudice. He was fully apprised of the theories the State might use because he was charged with those felonies from the filing of the initial information. At trial, the State simply folded the other felonies Luebbert was charged with committing in Black's house into the aggravated burglary instruction. Luebbert presented a defense to these claims at trial. Thus, regardless of whether we apply the statutory or constitutional harmless error tests, see *Dunn*, 304 Kan. at 815-17, we are firmly convinced there is no reasonable possibility the technical defect in the burglary charge contributed to the verdict in this case. See *State v. Bolze-Sann*, 302 Kan. 198, 216, 352 P.3d 511 (2015).

2. *Admission of Photographs Disclosed Shortly Before Trial*

On the second day of trial, Luebbert objected to the admission of photographs taken by the SANE/SART nurse—the person who performed Black's sexual-assault examination at the hospital—because the State had not produced them until shortly before trial. Luebbert argued the State's late production violated K.S.A 22-3212 and that the photographs should be excluded under K.S.A. 60-445. Although Luebbert admitted that the SANE/SART nurse described the petechiae in her report and in her testimony at the preliminary hearing, he maintained the new photographs were an undue surprise because the previously disclosed photographs did not depict petechiae while the new photographs did. Luebbert also argued the late timing of the State's disclosure denied him the opportunity to pursue an expert to review the pictures.

10

When the district court asked about this delay, the State explained that it had only received the pictures the week before. The pictures were never submitted to law enforcement with the medical reports because the pictures had to be obtained separately through an encrypted service from the hospital. The State learned of the pictures while preparing the nurse for her trial testimony and immediately requested them. As soon as the State received the pictures, the State made copies available to Luebbert. Luebbert's counsel did not pick up the photographs until the first day of trial.

The district court admitted the photographs. In doing so, the court noted that Luebbert had been aware since the preliminary hearing that the SANE/SART nurse would be testifying regarding the petechiae—as well as bruising, a hemorrhage, and venous pooling in and around Black's eyes—as part of her narrative of Black's injuries and her procedure for documenting them. The court noted that "the presence of the photographs should not have come as total surprise to anyone. They do no more than provide visual proof of testimony that has already been given regarding the presence of petechiae and other injuries." Thus, there was nothing unique in the photographs that would have caused Luebbert to seek expert testimony. And the district court also found the photographs were not in the State's control or possession prior to the week before trial, and the State had promptly provided them to Luebbert once it acquired them.

K.S.A. 2018 Supp. 22-3212 requires the State to provide the defendant, upon request, "books, papers, documents . . . which are or have been within the possession, custody or control of the prosecution, and which are material to the case and will not place an unreasonable burden upon the prosecution." K.S.A. 2018 Supp. 22-3212(b)(1). Such disclosures must be made "no later than 21 days after arraignment or *at such reasonable later time as the court may permit*." (Emphasis added.) K.S.A. 2018 Supp. 22-3212(h). When a party later discovers additional material that is subject to discovery, the party "shall promptly notify the other party . . . of the existence of the additional material." K.S.A. 2018 Supp. 22-3212(i). If a party fails to do so, the district court may

order the discovery or inspection of the undisclosed materials, grant a continuance, prohibit the party from introducing the undisclosed materials into evidence, or enter any other order it finds just under the circumstances. K.S.A. 2018 Supp. 22-3212(i).

This court reviews a district court's decision to exclude or admit evidence for an abuse of discretion. See *State v. Miller*, 308 Kan. 1119, 1166-67, 1174-75, 427 P.3d 907 (2018). A court abuses its discretion if (1) no reasonable person would take the view it adopted, (2) the decision is based on an error of law, or (3) the decision is based on an error of fact. 308 Kan. at 1138. The party challenging the court's evidentiary ruling bears the burden of proving the abuse of discretion. See 308 Kan. at 1138. Reversal is required only where the erroneous admission of evidence "'is of such a nature as to affect the outcome of the trial and deny substantial justice.'" *State v. Engelhardt*, 280 Kan. 113, 130, 119 P.3d 1148 (2005).

The enforcement of discovery orders and weighing of prejudice under K.S.A. 60-445 are both matters commended to the particular judgment of the trial court. Here, the record supports the district court's finding that the photographs in question were not in the State's possession, custody, or control until the week before trial. And the court's explanation—that Luebbert was aware of the nurse's testimony regarding the petechiae and Black's other injuries to her eyes from the preliminary hearing and that the State produced the photographs as soon as they obtained them—is reasonable. The decision to admit the photographs was within the district court's sound discretion. We will not substitute our judgment on appeal.

3. *Evidence of Other Episodes of Domestic Violence Admitted Under K.S.A. 60-455*

Luebbert claims the district court erred in admitting extensive evidence of his history of domestic violence against Black, dating from 2013. Indeed, much of the evidence presented over the course of the six-day trial in this case did not directly

12

describe the incident giving rise to his convictions, but instead involved multiple previous altercations, police reports, and court orders against him. Luebbert argues that this information was irrelevant propensity evidence, was unduly prejudicial, and should not have been admitted.

In the months leading up to trial, the State moved for permission to introduce evidence of Luebbert's previous episodes of domestic violence against Black under K.S.A. 60-455 to show his motive and their marital discord. Although the State did not specifically delineate which episodes or which particular orders it would seek to admit, it noted there had been multiple incidents of violence between Luebbert and Black, and there were 10 protection-from-abuse or no-contact orders entered against Luebbert between September 2015 and September 2016. Luebbert opposed the admission of this evidence, asserting it was irrelevant, immaterial, and overly prejudicial.

Roughly seven weeks before trial, the district court held a hearing on various pretrial matters, including the State's K.S.A. 60-455 motion. The court took the matter under advisement and subsequently ruled—over a month before trial—that Luebbert's prior instances of domestic violence were admissible to show motive and the discordant nature of Luebbert and Black's relationship.

At trial, the State offered extensive evidence of various violent episodes between Luebbert and Black, beginning in 2013 and extending through the incident at issue here. The State also offered 21 no-contact orders against Luebbert, prohibiting interactions with Black. Luebbert did not object to any of this evidence. At the close of trial, the court provided a limiting instruction to the jury: "Evidence has been admitted tending to prove that the defendant committed bad acts other than the crimes charged. Such evidence may

13

only be considered as evidence of defendant's motive and of the marital discord between the parties."

Despite his lack of objection to any of this evidence at trial, Luebbert now argues the court erred in admitting the K.S.A. 60-455 evidence, renewing his pretrial objections based on relevance and undue prejudice. But because he did not object to the admissibility of this evidence *at trial*—and thus allow the court to weigh its relevance and prejudice in the context of the case as it was presented to the jury—Luebbert has not preserved this issue for our review.

K.S.A. 60-404 requires a party to timely object to the admission of evidence to seek reversal of a judgment based on its erroneous admission. *State v. Breeden*, 297 Kan. 567, 581, 304 P.3d 660 (2013). Under this statute, a verdict or judgment will not be reversed "by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404; see also *State v. King*, 288 Kan. 333, 336, 204 P.3d 585 (2009) (compliance with K.S.A. 60-404 is required to preserve evidentiary issues for appellate review).

Regardless of how a court rules on a pretrial motion, the contested evidence has no legal consequence *until it is admitted at trial*. K.S.A. 60-404's objection requirement thus allows the district court to act as gatekeeper of the evidence *at trial*—to give the court the opportunity to consider as fully as possible whether evidence should be admitted and thereby reduce chances of reversible error. 288 Kan. at 342.

The evidence presented in this case underscores the importance of this gatekeeping role. Without any contemporaneous discussion at trial, we are left without record or context as to which evidence Luebbert believes was irrelevant or overly prejudicial, and why. But these matters are at the heart of any claim of evidentiary error.

Luebbert's general argument regarding K.S.A. 60-455 is not properly preserved for our review.

4. *No Cumulative Error*

In his final argument on appeal, Luebbert argues that a cumulation of errors deprived him of a fair trial. But we have found only one error in the claims presented—the failure to allege with specificity the ulterior felony in the burglary charge—and have concluded that this error did not prejudice Luebbert's substantial rights. A single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018).

Affirmed.