NOT DESIGNATED FOR PUBLICATION

No. 113,491

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RICHARD R. RODRIGUEZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed August 11, 2017.
Affirmed.

*Michael P. Whalen* and *Krystle M.S. Dalke*, of Law Office of Michael P. Whalen, of Wichita, for
appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before BUSER, P.J., PIERRON and STANDRIDGE, JJ.

*Per Curiam*:  Richard R. Rodriguez appeals following his convictions for
aggravated burglary and misdemeanor battery. Rodriguez contends the district court erred
by failing to arrest the judgment against him based on a defective complaint, by failing to
properly instruct the jury on the crime of aggravated burglary, and by failing to inquire
into a potential conflict of interest he alleges was set forth in his pretrial pro se Motion
for Speedy Trial and/or Dismissal with Prejudice. He also argues the evidence was

1

insufficient to support his conviction for aggravated burglary. Finding no error and sufficient evidence to support his conviction for aggravated burglary, we affirm.

FACTS

In the early morning hours of June 21, 2013, Park City Police Officer Dustin Belton was dispatched to a residence due to a report of a fight. Upon arrival, Belton made contact with Heather Hadley and Bryan Swingle, who advised that they had been attacked by Rodriguez and Jamie Lambert. Hadley described both Rodriguez and Lambert as her former roommates. Hadley and Swingle stated that Rodriguez had kicked open the front door, entered the house, and began hitting Swingle with his fists. Shortly thereafter, a masked man, who Hadley and Swingle recognized as Lambert, entered the house and began striking Swingle with a metal chain. Hadley stated that Lambert also struck her twice with the chain and said that he was going to kill her. Hadley had bruising and swelling on her side and back, while Swingle had bruising on his body and several lacerations on his head that required surgical staples and ultimately left scars.

Law enforcement documented the scene, which included a chain link on the front porch of the residence, damage to the front door, and pools of blood and blood spatter in the doorway and inside the residence. Rodriguez agreed to speak with law enforcement, who observed that Rodriguez' hands were swollen and that he had blood on his left thumb and jeans. Rodriguez admitted that he went to Swingle's residence with Lambert, but he advised Lambert to stay in the car while he "took care" of Swingle. Rodriguez also admitted to entering the residence and striking Swingle several times with his fists. Rodriguez said that he saw Lambert come inside wearing a mask and that he had heard a metal chain rattling. Rodriguez said that after they left, Lambert told him that Lambert had struck Hadley twice with the chain.

Thereafter, the State charged Rodriguez and Lambert with one count of aggravated burglary and two counts of aggravated battery—one count for each victim. Lambert ultimately entered pleas to two counts of aggravated battery, while the case against Rodriguez proceeded to trial. Before trial, Rodriguez filed a pro se "Motion for Speedy Trial and/or Dismissal with Prejudice." Because Rodriguez was represented by appointed counsel, the district court clerk's office filed the motion and sent a copy of it to counsel. The motion was never heard by the district court.

At trial, Hadley described her relationship with Rodriguez as "[g]ood friends with benefits" but claimed that she was not in a romantic relationship with either Rodriguez or Swingle on June 21, 2013. Hadley said she was asleep in the bedroom when she heard someone beating on the door. After recognizing Rodriguez through the window, she told Swingle not to open the door. According to Hadley, Rodriguez kicked the door open and "went nuts, just pounding" Swingle's face with his fists. Hadley said she jumped on Rodriguez' back to try and break up the fight. Hadley claimed someone wearing a mask came inside shortly thereafter and began hitting her in the back with a large tow chain. Hadley recognized the person with the chain as Lambert, whom she had known for over 20 years. As Rodriguez continued to punch Swingle with his fists, Hadley ran around the corner and called 911, while Rodriguez and Lambert ran out the front door. Hadley did not recall Rodriguez ever touching her during the altercation.

Swingle testified to a similar version of events. He said that after Rodriguez kicked the door open, Rodriguez got on top of him and began pounding him and hitting him in the face with his fists. According to Swingle, Rodriguez told him to "quit sleeping with his ol' lady." Swingle also recognized Lambert as the individual with the chain. Swingle testified that Lambert hit him and Hadley with the chain while saying that he was going to kill them. Swingle said that Rodriguez continued to hit him with his fists while Lambert struck Swingle in his head and back with the chain. Swingle claimed the beating stopped only after Hadley broke free and called 911.

3

Park City Police Detective Dwight Wilkes testified at trial about his conversation with Rodriguez on the night of the attack. Rodriguez agreed to speak with Wilkes after being advised of his *Miranda* rights. Rodriguez told the detective that he believed he and Hadley were in an exclusive romantic relationship and that he became upset after learning that she might be cheating on him with Swingle. Rodriguez said Lambert drove him to Swingle's house so that he could "let [Swingle] know that it wasn't okay to do that." According to Wilkes, Rodriguez admitted he went to Swingle's house to beat Swingle, that he was angry and agitated, and that when he saw Swingle he "just saw red" and grabbed Swingle by the throat and began striking him. Rodriguez claimed that he told Lambert to wait in the car and that he only became aware that Lambert had a chain when he heard it rattling during the attack.

Rodriguez testified in his defense. He said Hadley had been his fiancée or common-law wife for about 3 1/2 years. During this time, Rodriguez lived in Texas while Hadley lived in Wichita with several different people, including Lambert and Swingle. Hadley told Rodriguez that Swingle was just a friend, and Rodriguez believed that he and Hadley were still in a relationship. Rodriguez said he went to see Hadley at Swingle's house on June 21, 2013, where he became suspicious that Hadley and Swingle were more than friends. Rodriguez said that he later went to Lambert's house and then had Lambert drive him back to Swingle's house at about 2:30 a.m. so he could confront Hadley "[t]o get to the truth of what was going on" because he "was caught kind of in a triangle" that he was unaware of and "just wanted to find out what was going on." Rodriguez directed Lambert to park a couple of houses down from Swingle's house and to stay in the car. Rodriguez claimed that he did not tell Lambert to come inside, that he had no knowledge Lambert was going to come inside, and that he did not know that Lambert had a chain. Rodriguez denied kicking Swingle's door down. According to Rodriguez, Swingle opened the door, and Rodriguez saw Hadley "half naked." This made Rodriguez angry and he "just kind of wigged," hitting Swingle with his fists while asking if Swingle was sleeping with his "old lady" and asking Hadley if this was what she actually wanted.

4

Rodriguez believed he hit Swingle four times and did not recall Hadley jumping on him. Rodriguez remembered looking up and seeing Lambert in the doorway, but he claimed he did not see Lambert holding a chain. Rodriguez denied ever possessing or striking anyone with a chain and said he did not learn about the chain until after the incident. Rodriguez also denied he went to Swingle's house to cause significant harm, claiming the altercation was unplanned and "[j]ust kind of sort of happened." Rodriguez reiterated that he only went there to find out exactly what was going on between Hadley and Swingle and that he never asked Lambert to come as a back-up.

The jury convicted Rodriguez of aggravated burglary and one count of the lesser included offense of misdemeanor battery against Swingle. The jury found Rodriguez not guilty of any type of battery against Hadley. The district court granted Rodriguez' motion for a durational departure and sentenced him to a controlling term of 44 months in prison.

ANALYSIS

Rodriguez presents four issues on appeal. First, he contends the district court erred by failing to arrest the judgment against him based on a defective complaint. Second, he argues the district court erred by instructing the jury on the crime of aggravated burglary. Third, he argues the evidence was insufficient to support his conviction for aggravated burglary. Fourth, he argues that the Sedgwick County District Court Clerk's system for handling pro se motions filed by represented defendants is unconstitutional on its face and as applied to him because it violates the fundamental right of citizens to access the courts. We address each of the issues presented in turn.

1. *Failure to arrest judgment*

Rodriguez argues the district court erred when it failed to arrest the judgment against him because the complaint was defective. A discussion of some additional facts is

5

warranted to place Rodriguez' arguments in context. The State charged Rodriguez and Lambert in count 1 of the complaint with aggravated burglary, contrary to K.S.A. 2012 Supp. 21-5807(b):

"[O]n or about the 21st day of June, 2013 A.D., one RICHARD R. RODRIGUEZ and JAMIE B LAMBERT did then and there unlawfully and without authority, enter into or remain within any building, manufactured home, mobile home, tent or other structure, vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property, to-wit: a residence located at [street address], Wichita, Sedgwick County, Kansas, in which there was a human being, to-wit: Heather M Hadley and Bryan K Swingle, with the intent to commit a felony therein, to-wit: Aggravated Battery."

Counts 2 and 3 of the complaint alleged that Rodriguez and Lambert committed aggravated battery, contrary to K.S.A. 2012 Supp. 21-5413(b)(1)(B), by "knowingly caus[ing] bodily harm to [Swingle and Hadley] with a deadly weapon, to-wit: metal chain."

At trial, Rodriguez defended on the basis that he did not plan the attack or plan to cause anyone significant harm and did not know that Lambert was going to join the fight or that Lambert had a metal chain.

At the jury instructions conference, the parties discussed the instruction defining the crime of aggravated burglary as set forth in PIK Crim. 4th 58.130 (2012 Supp.). PIK Crim. 4th 58.130 lists the elements of aggravated burglary, consistent with K.S.A. 2012 Supp. 21-5807(b). Under the facts presented here, PIK Crim. 4th 58.130 provides:

"The defendant is charged with aggravated burglary. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant entered a home.
"2. The defendant did so without authority.

6

"3. The defendant did so with the intent to commit (insert [underlying] felony) therein.

"4. At the time there was a human being in the home.

"5. This act occurred on or about the __ day of _____, ___, in _____ County, Kansas.

"The elements of [the underlying felony] are as follows: _____."

In this case, the State alleged that Rodriguez intended to commit the underlying felony of aggravated battery, which is defined, in relevant part, as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." See K.S.A. 2012 Supp. 21-5413(b)(1)(B). The prosecutor argued that within the aggravated burglary charge, aggravated battery should be defined for the jury as "knowingly caus[ing] bodily harm to another person in a manner whereby great bodily harm could be inflicted."

Defense counsel disagreed, arguing the crime should instead be defined as "knowingly causing bodily harm to another person with a deadly weapon" because this was the language the State had used to charge Rodriguez with aggravated battery in counts 2 and 3 of the complaint. In support of this argument, defense counsel claimed the State's suggested language allowed it to charge Rodriguez under two different theories of prosecution: aggravated battery as the underlying felony in count 1 alleging he knowingly caused bodily harm to another person in a manner whereby great bodily harm could be inflicted and aggravated battery as charged in counts 2 and 3 alleging Rodriguez knowingly caused bodily harm to another person with a deadly weapon. Rodriguez claimed allowing two different theories of prosecution would constitute unfair surprise for the defense, would cause jury confusion, and essentially would give the State "a second bite of the apple."

In response, the prosecutor informed the district court that the crime of aggravated burglary does not require the defendant to be charged with, or even complete, the

7

underlying felony that the State alleges the defendant intended to commit. Thus, aggravated battery as the alleged underlying felony Rodriguez intended to commit as part of the aggravated burglary charge in count 1 is separate and distinct from the aggravated battery as the alleged primary charge in counts 2 and 3. The prosecutor explained that under the facts of this case, Rodriguez could be convicted as a principal in count 1 for intending to commit one type of aggravated battery when he unlawfully entered the residence and also be convicted of a different type of aggravated battery under an aiding and abetting theory based on Lambert's action of using a deadly weapon.

The district court ultimately agreed with the State and instructed the jury in instruction No. 4 that the underlying felony of aggravated battery was defined, in relevant part, as "knowingly caus[ing] bodily harm to another person in a manner whereby great bodily harm could be inflicted." During closing argument, the State discussed the distinction between the aggravated battery alleged in count 1 and that alleged in counts 2 and 3. During deliberations, the jury presented the district court with the following question: "Re: Instruction 4. Please clarify elements of aggravated battery as stated in count one vs count two (Instruction 6)." The district court responded, "We are not able to answer your question other than to ask you to please refer to all the instructions as a whole for your answer."

Having set forth the facts relevant to Rodriguez' challenge to the complaint, we are ready to address his argument that the district court erred when it failed to arrest the judgment against him because the complaint was defective. Specifically, Rodriguez argues the district court did not have subject matter jurisdiction to convict him because count 1 of the complaint did not set forth the specific means of aggravated battery it was alleging as the underlying felony to support the charge of aggravated burglary. With regard to the legal test for sufficiency of the charging document, Rodriguez claims this court should revisit the test set forth by our Supreme Court in *State v. Hall*, 246 Kan. 728,

8

793 P.2d 737 (1990), *overruled in part on other grounds by Ferguson v. State*, 276 Kan. 428, 78 P.3d 40 (2003), and apply a pre-*Hall* analysis.

After the parties filed their briefs, the Kansas Supreme Court issued its opinion in *State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016), which specifically overruled *Hall* and other caselaw regarding deficient charging documents. In *Dunn*, the Supreme Court established a new analytical framework for evaluating a defective complaint claim. 304 Kan. 773, Syl. ¶ 4. After the decision in *Dunn* came down, neither party filed a letter of additional authority pursuant to Supreme Court Rule 6.09(b) (2017 Kan. S. Ct. R. 39). In the absence of evidence that our Supreme Court is departing from the analytical framework in *Dunn*, this court is duty bound to follow Kansas Supreme Court precedent. *State v. Vrabel*, 301 Kan. 797, 809-10, 347 P.3d 201 (2015); *State v. Belone,* 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015); see also *State v. Nguyen*, 281 Kan. 702, 715, 133 P.3d 1259 (2006) (generally, a decision overruling precedent is applied to all similar cases pending as of the date of the overruling decision). Therefore, we apply the analysis set forth in *Dunn* to address this issue.

The standard of review for evaluating assertions of errors in charging documents is de novo. *Dunn*, 304 Kan. at 819. When reviewing a criminal case, an appellate court's essential task is to determine whether the proceeding was so imperfect as to be unfair. 304 Kan. at 775. Our Supreme Court expressly held in *Dunn* that "[c]harging documents do not bestow or confer subject matter jurisdiction on state courts to adjudicate criminal cases; the Kansas Constitution does." 304 Kan. at 811. The court also expressly rejected the legal proposition that a charging document must include all essential elements of the charged offense to avoid being insufficient. 304 Kan. at 811. Instead, the *Dunn* court focused on the plain language of K.S.A. 22-3201(b), which governs charging documents. "A charging document shall state 'essential facts' constituting the crime charged, and the document 'shall be deemed sufficient' if it is 'drawn in the language of the statute.'" 304 Kan. at 811 (quoting K.S.A. 22-3201[b]). Thus,

"[a] charging document's failure to include an element of a crime under the defining Kansas statute does not deprive the court of subject matter jurisdiction to convict; it does not even necessarily meet the statute-defined threshold for failure to charge a crime because the facts alleged, rather than the legal elements regurgitated, determine whether the charge is sufficient under the statute defining the crime." 304 Kan. at 819-20.

Kansas courts now recognize three types of charging document defects. First, a charging document is defective when it fails to show that the Kansas Constitution's requirement that the document be filed in the correct court and territory has been satisfied. Second, a charging document is defective when it fails to allege facts that, if proven beyond a reasonable doubt, show the commission of a Kansas crime as required by state statutes. And third, a charging document is defective when it fails to meet the constitutional standards of providing the defendant with due process and adequate notice of the charges. The first defect creates a state constitutional error; the second defect creates a state statutory error; and the third defect creates a violation of federal and state constitutional rights. *Dunn*, 304 Kan. at 815.

None of these defects "prevents or destroys the existence of subject matter jurisdiction over criminal cases in our district and appellate courts." *Dunn*, 304 Kan. at 815-16. Thus, defects in charging documents are subject to the general rule that issues may not be raised for the first time on appeal unless an exception applies. 304 Kan. at 818-19. Rodriguez acknowledges that he did not file a motion to arrest judgment below but argues that the issue was preserved by his objection to the jury instruction and by his posttrial motions challenging the State's admission of uncharged conduct. After a thorough review of the record, we are not persuaded by Rodriguez' argument that he properly raised this issue below. Thus, in order for this court to address his claim on appeal, he must establish that (1) the newly asserted claim involves only a question of law arising on proved or admitted facts, which is determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or prevent the denial of fundamental rights; or (3) the district court was right for the wrong reason. 304 Kan. at

10

819; Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34). Although Rodriguez argues in his brief that the complaint was fatally defective, he failed to argue why we should consider this issue for the first time on appeal. But due to the timing of our Supreme Court's decision in *Dunn*, Rodriguez was not aware of the application of Rule 6.02(a)(5) in a defective complaint challenge. Thus, we will address the merits of the issue presented in this case but caution future litigants to comply with the Rule. See *State v. Williams,* 298 Kan. 1075, 1085-86, 319 P.3d 528 (2014).

Looking to the three types of charging document defects, there is no dispute that Rodriguez' complaint was filed in the correct court and territory. In addition, the complaint mirrors the language from the statute defining aggravated burglary, and the complaint alleged facts that if proven beyond a reasonable doubt would support a finding that a Kansas crime was committed. Rodriguez' argument implicates the third type of charging document insufficiency—that the complaint failed to provide him with due process or adequate notice of the charges against him. With regard to the third type of charging document insufficiency, the *Dunn* court stated:

> "Every criminal defendant has a right under the Fifth and Fourteenth Amendments to due process before he or she can be deprived of life, liberty, or property. In addition, we have long recognized that a criminal defendant has a right under the Sixth Amendment to notice of the charge or charges pursued by the State. See, *e.g.*, *State v. Loudermilk*, 221 Kan. 157, 158-59, 557 P.2d 1229 (1976); see also *State v. Rasch*, 243 Kan. 495, 497, 758 P.2d 214 (1988) (one goal of adequate charging document to inform defendant of alleged offense, in part to enable double jeopardy claim). And Section 10 of the Kansas Constitution Bill of Rights contains its own requirement that a criminal defendant be informed of the charges against him or her. Depending on the form a defendant's challenge to a charging document takes, these constitutional provisions may apply and may require relief from a conviction or sentence because the document led to prejudicial due process or notice error. See *State v. Wade*, 284 Kan. 527, 537, 161 P.3d 704 (2007) (instruction on elements of aggravated burglary erroneous because it added

ulterior felony on which defendant had no notice before evidentiary portion of trial concluded; error prejudiced defendant, required reversal of conviction)." 304 Kan. at 814.

*State v. Wade*, 284 Kan. 527, 161 P.3d 704 (2007), is instructive. In that case, the charging document omitted the intended felony upon which the aggravated burglary charge was predicated. The State informed Wade that it was first-degree murder. Wade testified at trial that he entered the house with the intent to scare the occupant. In the jury instructions, aggravated assault was added as an alternative predicate felony. The Supreme Court stated:

"An information charging burglary is defective in form if it fails to specify the ulterior felony the accused intended to commit when making the unauthorized entry. However, the failure to specify the ulterior intended felony in a burglary information will not constitute reversible error if the defendant was provided adequate notice of the alleged ulterior felony before trial." 284 Kan. 527, Syl. ¶ 2.

The court concluded that Wade was prejudiced because he had no notice of the ulterior felony before the evidentiary portion of the trial concluded. 284 Kan. at 537.

The intended felony at issue in the present case is aggravated battery. Our legislature has defined five alternative means of committing the crime of aggravated battery, which are divided based on whether the defendant acted intentionally or recklessly. See K.S.A. 2012 Supp. 21-5413(b). Relevant here is K.S.A. 2012 Supp. 21-5413(b)(1)(B), which defines aggravated battery as "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." Rodriguez alleges a defect in the complaint with regard to the aggravated burglary charge. The complaint alleged Rodriguez, without authority, entered a structure in which there was a human being with the intent to commit aggravated battery. Rodriguez identifies the defect in the complaint as the failure to specify any particular means of aggravated battery as the underlying felony while the jury

12

instructions specified the underlying felony of aggravated battery as "knowingly caus[ing] bodily harm to another person in a manner whereby great bodily harm could be inflicted." Rodriguez suggests the defective complaint failed to provide him with due process or adequate notice of the charges against him given counts 2 and 3 in the complaint charged him with committing aggravated battery by causing bodily harm to another person with a deadly weapon.

Unlike the situation in *Wade*, count 1 of the complaint in this case specified the ulterior felony Rodriguez intended to commit when making the unauthorized entry—aggravated battery; thus, Rodriguez was properly put on notice that the State's theory of prosecution on the aggravated burglary charge was that Rodriguez intended to commit an aggravated battery when making the unauthorized entry. The aggravated burglary jury instruction did not change the underlying felony identified in the complaint. There is no obvious prejudice where a defendant has been informed that he must be prepared to defend against five alternative means at trial and then, after the conclusion of the trial, the accusation is reduced to only one means for jury deliberation. The State did not add any new charges or present any new facts that would serve to surprise Rodriguez. Notably, Rodriguez' trial counsel acknowledged she received the State's proposed jury instructions—which included the aggravated battery elements language at issue—before trial. And at no time did defense counsel file a bill of particulars.

Because we find the complaint was not defective, we conclude the district court did not err in failing to arrest judgment against Rodriguez.

2. *Jury instruction on aggravated burglary*

Rodriguez argues the district court erred when it instructed the jury on the definition of aggravated battery as the underlying felony in the aggravated burglary instruction because it included language that was broader than the complaint. Rodriguez

13

asserts that the language in instruction No. 4 defining aggravated battery as "knowingly caus[ing] bodily harm to another person in a manner whereby great bodily harm could be inflicted" was broader than the language in counts 2 and 3 of the complaint that charged him with the crime of aggravated battery by "knowingly caus[ing] bodily harm to another person . . . with a deadly weapon." Rodriguez asserts that the instruction violated his due process rights by altering the theory and conduct the State had originally charged him with, misled him in the preparation of his defense, and resulted in jury confusion.

When reviewing jury instruction challenges, an appellate court applies the following standard of review:

> """(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).'" [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Because Rodriguez objected to the language of the jury instruction below, his challenge to the instruction is preserved for appeal. Rodriguez' overbreadth argument raises the question of whether the aggravated battery definition provided in instruction No. 4 was legally appropriate. As explained by our Supreme Court:

> "A jury instruction on the elements of a crime that is broader than the complaint charging the crime is erroneous. The reason for this is because the charging instrument sets out the specific offense alleged to inform the defendant of the nature of the accusation, to permit the development of a defense to meet that accusation, and to protect

14

against conviction based on facts not contemplated in the accusation. Accordingly, the State is bound by the wording of its charging document, and the prosecution and district court must use caution in conforming the jury instructions to the charges.

"Generally, if a jury instruction on the elements of a crime adds alternate statutory elements that were not contained within the language of the complaint or information charging the defendant with the crime, the instruction is overly broad and, thus, erroneous." *State v. McClelland*, 301 Kan. 815, Syl. ¶¶ 4-5, 347 P.3d 211 (2015).

Cases that address overbroad jury instructions generally deal with instructions that add alternate elements of a crime from the statutory language that were not included in the complaint. See, *e.g.*, *State v. Hart*, 297 Kan. 494, 508-09, 301 P.3d 1279 (2013) (finding overbroad jury instruction requiring crime of indecent liberties with a child be committed with intent to arouse sexual desires of victim or defendant or both, but complaint only alleged intent to satisfy sexual desires of defendant); *State v. Jones*, 290 Kan. 373, 383-84, 228 P.3d 394 (2010) (finding overbroad jury instruction for aggravated kidnapping that included additional statutory elements beyond what was charged); *State v. Trautloff*, 289 Kan. 793, 802-03, 217 P.3d 15 (2009) (finding overbroad jury instruction for sexual exploitation of child that encompassed "the broadest possible theory of misconduct under the statute," while complaint charged defendant very narrowly and evidence tending to prove narrowly tailored charge was minimal and circumstantial); *Wade*, 284 Kan. at 537 (finding overbroad jury instruction for aggravated burglary predicated on underlying felony of either first-degree murder or aggravated assault when defendant was not on notice that aggravated assault could be underlying felony); *State v. Hemby*, 264 Kan. 542, 547-50, 957 P.2d 428 (1998) (finding overbroad jury instruction for sodomy that allowed conviction for oral or anal copulation when complaint only charged oral copulation); *State v. Turbeville*, 235 Kan. 993, 997-98, 686 P.2d 138 (1984) (finding overbroad jury instructions for kidnapping that included statutory alternate intents "to terrorize another" and "to facilitate flight" that were not included in complaint). The common theme in these cases is the addition of statutory language in the jury instruction that was not included in the complaint.

15

The facts presented here are distinguishable from the cases cited above. Instruction No. 4 did not contain an alternate statutory element that was not included within the language of the charged crime or cite to a new underlying felony that could be relied on to satisfy the underlying felony element. Both instruction No. 4 and count 1 of the complaint identified aggravated battery as the underlying felony for the crime of aggravated burglary. The only difference was that the instruction, unlike the language of the complaint, specified the means of committing the crime of aggravated battery. Contrary to Rodriguez' assertion, the language in the complaint did not identify or imply that a specific means of aggravated battery was the underlying felony supporting the aggravated burglary charge.

That the elements of aggravated battery in the jury instructions for count 1 differed from the aggravated battery elements in the jury instruction for counts 2 and 3 does not create error either. The charge in count 1 is completely separate from the charges in counts 2 and 3. It was not necessary for the State to prove a completed aggravated battery in order to prove that an aggravated burglary was done with an intention to cause bodily harm to another person in a manner whereby great bodily harm could be inflicted. K.S.A. 2012 Supp. 21-5807(b) did not require a conviction or even the filing of a complaint on the underlying felony in order to charge a defendant with aggravated burglary. See *State v. Dixon*, 289 Kan. 46, 63, 209 P.3d 675 (2009) (defendant need not be prosecuted for or convicted of an underlying felony in order to be convicted of felony murder); *State v. Robbins*, 272 Kan. 158, 174, 32 P.3d 171 (2001) (in order to properly charge defendant with crimes of kidnapping and aggravated kidnapping, no conviction or filing of a complaint on underlying crime is required), *disapproved on other grounds in State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006). Thus, the State was not limited to only pursuing the theory that Rodriguez had the intent to cause bodily harm with a deadly weapon when he committed the unlawful entry.

16

Consistent with the complaint, the instruction on aggravated burglary identified aggravated battery as the underlying felony and then specifically defined the means of aggravated battery that could satisfy the specific intent element of aggravated burglary. The instruction on aggravated burglary was actually more precise, not broader, than the charged crime. See *McClelland*, 301 Kan. at 830 (jury instruction on felony murder not overbroad where it identified three alternate attempted aggravated robberies that the jury could rely on to satisfy element that victim's death occurred during attempted commission of inherently dangerous felony and complaint simply identified attempted aggravated robbery as underlying felony supporting the felony-murder charge). The jury instruction on aggravated burglary was legally appropriate.

The instruction was also factually appropriate based on the evidence showing that Rodriguez was angry and agitated when he went to Swingle's residence because he thought that Hadley was cheating on him. Upon arrival, Rodriguez told Lambert to park away from Swingle's house, kicked in the door, and immediately began punching Swingle and accusing him of involvement with Hadley. Lambert arrived at the scene with a metal chain that he used to hit Swingle and Hadley. Accordingly, the district court's definition of aggravated battery as "knowingly caus[ing] bodily harm to another person in a manner whereby great bodily harm could be inflicted" within the aggravated burglary instruction was not erroneous.

3. *Sufficiency of the evidence: aggravated burglary*

Rodriguez presents two alternative arguments challenging the sufficiency of the evidence against him. First, Rodriguez argues his conviction for aggravated burglary must be vacated because it is inconsistent with the jury's finding that he was not guilty of the aggravated battery charges in counts 2 and 3. Second, he contends that the evidence is insufficient to support his aggravated burglary conviction.

17

a. *Inconsistent verdicts*

Whether a jury's inconsistent verdicts should result in a new trial is a question of law over which an appellate court exercises unlimited review. See *State v. McKissack*, 283 Kan. 721, 733, 156 P.3d 1249 (2007).

Before reaching the substantive issue presented, we must first determine whether the issue was properly preserved for appeal. Rodriguez asserts that it was preserved because he argued in his posttrial motions that the jury was erroneously instructed on uncharged conduct and that the evidence was insufficient to support his conviction for aggravated burglary. Upon review of the motions, however, there is no indication that the arguments raised in Rodriguez' posttrial motions preserved the issue of inconsistent verdicts as he suggests. Issues not raised before the district court generally cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, but Rodriguez does not acknowledge his failure to raise this issue below or otherwise cite one of the exceptions that would warrant our review of the issue. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Supreme Court Rule 6.02(a)(5) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. Litigants who fail to comply with this rule risk a ruling that the issue is improperly briefed and will be deemed waived or abandoned. *Williams*, 298 Kan. at 1085. Our Supreme Court has held that Rule 6.02(a)(5) is to be strictly enforced. *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015).

But even if Rodriguez had properly preserved this issue below, he is still not entitled to relief because the verdicts in this case were not inconsistent. An inconsistent jury verdict is defined as:

"'Where an accused is charged with separate and distinct crimes, although of a similar character, in two or more counts, a verdict of acquittal on one or more counts and of conviction on the others is not ordinarily or necessarily inconsistent, at least where each offense requires different evidence or involves factual variations. When accused is convicted on one count and is acquitted on another count, the test is whether the essential elements in the count wherein accused is acquitted are identical and necessary to proof of conviction on the guilty count.'" *State v. Beach*, 275 Kan. 603, 616, 67 P.3d 121 (2003) (quoting 23A C.J.S., Criminal Law § 1407, pp. 347-48).

As previously discussed, Rodriguez was charged in count 1 with aggravated burglary, which included an underlying felony of aggravated battery. This charge was separate and distinct from the crimes of aggravated battery that were charged in counts 2 and 3. The aggravated battery alleged in count 1 required proof that upon Rodriguez' unlawful entry, he had the intent to "knowingly cause[] bodily harm to another person in a manner whereby great bodily harm could be inflicted." Conversely, the aggravated battery alleged in counts 2 and 3 required proof that Rodriguez "knowingly caused bodily harm . . . with a deadly weapon." In order to be found guilty of aggravated burglary, K.S.A. 2012 Supp. 21-5807(b) did not require the State to prove that Rodriguez had actually committed an aggravated battery. The statute simply required proof that Rodriguez intended to commit an aggravated battery at the time of the unlawful entry. Therefore, the jury's verdicts were not inconsistent.

 b. *Sufficiency of the evidence*

 In the alternative, Rodriguez argues the evidence was insufficient to support his conviction for aggravated burglary because there was no evidence that he intended to commit an aggravated battery.

 When the sufficiency of the evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A

19

conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016).

The jury was instructed that in order to find Rodriguez guilty of aggravated burglary, the State was required to prove, in relevant part, that

"1. The Defendant entered into a residence.
"2. The Defendant did so without authority.
"3. The Defendant did so with the intent to commit an aggravated battery therein.
"4. At the time there was a human being inside."

Aggravated battery was defined for the jury: "That The Defendant knowingly caused bodily harm to another person in a manner whereby great bodily harm could be inflicted." The term "bodily harm" was defined as

"any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner. The word 'great' distinguishes the bodily harm necessary to prove aggravated battery from slight, trivial, minor or moderate harm, and as such it does not include mere bruises, which are likely to be sustained in simple battery."

Rodriguez acknowledges that he was upset and hit Swingle with his fists but claims that there is no evidence that he intended to cause bodily harm in a manner whereby great bodily harm could be inflicted. To that end, Rodriguez argues that Lambert's actions were not reasonably foreseeable because he told Lambert to stay in the car and did not know that Lambert had a metal chain. Finally, Rodriguez notes that the jury did not find him guilty of any form of felony battery.

20

As noted earlier, Rodriguez did not need to be charged with, or convicted of, the underlying felony alleged in the aggravated burglary charge. While the jury's verdicts on counts 2 and 3 may indicate its belief that Rodriguez was not responsible under an aiding and abetting theory for Lambert's use of the metal chain, this has no bearing on whether the evidence was sufficient to show that Rodriguez had the intent to commit an aggravated battery when he entered Swingle's residence. The evidence indicated that prior to the attack, Rodriguez grew upset over Hadley's possible involvement with Swingle. Rodriguez went to Lambert's house, where he became angry and agitated, and then Lambert drove him to Swingle's house. Rodriguez had Lambert park a short distance away. Rodriguez pounded on Swingle's door, kicked the door in, and immediately began hitting Swingle with his fists. Rodriguez continued to hit Swingle with his fists even as Lambert hit Swingle's head and back with the chain. Rodriguez' argument essentially invites this court to reweigh the evidence, which we cannot do. See *Daws*, 303 Kan. at 789. Viewing the evidence in a light most favorable to the State, a rational factfinder could have found Rodriguez guilty beyond a reasonable doubt of aggravated burglary based on an underlying intent to commit an aggravated battery.

4. *Facial and "as applied" challenge to processing pro se motions in criminal cases*

Before trial, Rodriguez filed a Motion for Speedy Trial and/or Dismissal with Prejudice, asserting a violation of his statutory and constitutional speedy trial rights. The record reflects the motion was not set for hearing; instead, the district court clerk's office mailed a letter to defense counsel along with a copy of Rodriguez' motion. The letter stated:

> "Please find enclosed the pro se document which has been received by the clerk's office from your client. The document has been filed in the court file, but no hearings have been scheduled or further action will be taken at this time. Please review a copy of the document which we have enclosed for your consideration. We await further direction from you as to how to proceed on this matter."

21

In his original brief on appeal, Rodriguez argued that the Sedgwick County District Court Clerk's procedure of forwarding his motion to defense counsel without taking any action on it violated his constitutional right of access to the courts, which in turn violated his rights to due process, a speedy trial, and effective assistance of counsel.

After the original briefs were filed and the case set on a summary calendar docket, Rodriguez asked this court to stay and remand the case in order to supplement the record with an explanation of the process used by the Sedgwick County District Court when, like here, it receives a pro se motion filed by a criminal defendant who is represented by counsel. We granted Rodriguez' motion for stay and for remand to the district court, in part. Specifically, we ordered the parties to submit an agreed-upon written statement, approved by counsel and the Chief Judge of the 18th Judicial District and consistent with Supreme Court Rules 3.04 and 3.05 (2017 Kan. S. Ct. R. 23-24), (1) summarizing the Sedgwick County District Court's procedure for handling pro se motions filed by criminal defendants who are represented by counsel and (2) indicating whether Rodriguez' pro se motion was ever brought to the attention of a judge. The order permitted the parties to file supplemental briefs "raising any new issues that appellant deems appropriate."

In response to this court's order, the parties filed an agreed upon statement that referenced the following e-mail from Chief Judge James R. Fleetwood:

"The following is the established practice of the clerk of the 18th judicial district concerning pro se motion in criminal cases.
"1. All pro se motions are filed and time stamped.
"2. Three file stamped copies of the motion are made and distributed to the district attorney, defense attorney and defendant along with a copy of the 'Pro se motion notice' generated by Full Court.
"Pretrial Motions for change of counsel or to dismiss counsel; and motions objecting to continuances are set for hearing by the clerk. Other pretrial motions are not set for hearing until defense counsel requests a hearing after reviewing the motion.

22

"Post judgment motions are filed and time stamped. The trial judge or sentencing judge is contacted for a hearing date or is placed on the general Friday criminal motion docket for hearing.

"Again, this is the established practice of the clerk's office. There are no written policies or local rules.

"Attached you will find a copy of the letter sent to defense counsel with pro se motions not immediately set for hearing."

As to whether Rodriguez' pro se motion was ever brought to the attention of a judge, the parties responded:

"The defendant's 1-23-14 pro se motion was submitted through the system outlined by Chief Judge Fleetwood as evidenced by the letter addressed to the defendant's trial counsel included in the record on appeal. . . . There is no further indication within the record on appeal that defendant's trial counsel brought the matter to the court's attention."

Relying on the e-mail from Chief Judge Fleetwood, Rodriguez claimed in his supplemental brief that the practice in Sedgwick County District Court concerning pro se motions in criminal cases was unconstitutional not only as it applied to him in his circumstances but was also unconstitutional on its face because it deprived every represented pro se criminal defendant the right to access to the courts. Considering the original and the supplemental briefs together, Rodriguez appears to raise a facial and an as-applied challenge to the established practice in Sedgwick County District Court concerning pro se motions in criminal cases when the pro se litigant is represented by counsel.

Before reaching the merits of Rodriguez' arguments, we must address the issue of standing. Standing is a component of subject matter jurisdiction and may be raised at any time and on an appellate court's own motion. *Ternes v. Galichia*, 297 Kan. 918, 921, 305 P.3d 617 (2013). As noted above, Rodriguez argues at different times in his original and supplemental brief that the Sedgwick County District Court practice concerning pro se

23

motions in criminal cases when the defendant is represented by counsel is unconstitutional both on its face and as applied to him. The following general rules regarding standing apply to cases such as this:

> "'A party has standing to challenge constitutionality of a statute only insofar as it has an adverse impact on his [or her] own rights. As a general rule, if there is no constitutional defect in the application of statute to a litigant, he [or she] does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations.'" *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 508, 110 P.3d 438 (2005) (quoting *Ulster County Court v. Allen*, 442 U.S. 140, 154-55, 99 S. Ct. 2213, 60 L. Ed. 2d 777 [1979]).

Therefore, we address Rodriguez' "as applied" argument first, for if he is unable to establish that the practice as applied to him violated his constitutional right of access to the courts, he would have no standing for a facial attack on the constitutionality of the practice. To that end, Rodriguez contends the district court erred in failing to inquire into the possibility of a conflict with his counsel after he filed a pro se motion for speedy trial and/or to dismiss, stating as follows:

- He had conveyed to counsel that he wanted his speedy trial rights protected;
- He had been held in excess of the time allowed by statute;
- His case had been continued four times, absent good cause or for reasons set forth in K.S.A. 2016 Supp. 22-3402(e)(1)-(4); and
- Defense counsel's exercise of excessive continuances presented a "potential conflict of interest," which conflicted with his Sixth Amendment right to effective assistance of counsel.

In response, the State contends the district court's duty to inquire was never triggered because Rodriguez failed to articulate a statement of attorney dissatisfaction.

Both the United States Constitution and the Kansas Constitution guarantee the right of a criminal defendant to the effective assistance of counsel. *State v. Brown*, 300 Kan. 565, 574-75, 331 P.3d 797 (2014). If a defendant wants a different attorney, it is his or her burden to show justifiable dissatisfaction with counsel. Examples of justifiable dissatisfaction include conflicts of interest, irreconcilable disagreements between a defendant and his or her counsel, or complete breakdowns in communication between counsel and a defendant. A defendant who provides an articulated statement of attorney dissatisfaction to the district court triggers a duty by the court to inquire into a potential conflict of interest. When a district court fails to inquire into the nature of the potential conflict after the duty to inquire is triggered, the court abuses its discretion. *State v. Staten*, 304 Kan. 957, 971, 377 P.3d 427 (2016).

On appeal, Rodriguez claims he articulated justifiable dissatisfaction with his attorney sufficient to trigger the district court's duty to inquire into a potential conflict of interest. Specifically, Rodriguez argues his motion to dismiss for violation of statutory speedy trial rights included statements that imply defense counsel continued the trial setting on multiple occasions without first obtaining his permission. But in Kansas, defense counsel is not required to obtain his or her client's permission before seeking a continuance. See *Sola-Morales v. State*, 300 Kan. 875, 897, 335 P.3d 1162 (2014); *State v. Bafford*, 255 Kan. 888, 895, 879 P.2d 613 (1994) ("The decision of whether a motion for a continuance should be filed does not require a specific consultation between the attorney and client. . . . Counsel was not required to obtain [defendant's] permission prior to moving for a continuance."). But see *State v. Hines*, 269 Kan. 698, 7 P.3d 1237 (2000) (considering speedy trial issue when defendant "strenuously objected" to counsel's request for a continuance). And even if counsel was required to obtain Rodriguez' permission to continue trial, Rodriguez did not allege in the motion to dismiss that he would have opposed the continuances; he only states that he wanted a speedy trial, his case had been continued four times without an explanation in the record of the good cause shown, and that he believed four continuances were excessive. None of the

25

statements in Rodriguez' motion articulate attorney dissatisfaction sufficient to trigger the district court's duty to inquire into a potential conflict of interest. Rodriguez' motion was not captioned in any way that would suggest a conflict with trial counsel. Nor did Rodriguez make any suggestion in the motion that he wanted the court to appoint another attorney on his behalf. And Rodriguez does not argue on appeal that the district court erred in failing to dismiss this case based on his pro se motion alleging a speedy trial violation. So even if counsel needed Rodriguez' permission to continue the trial setting, and even if we can infer from the statements in the motion to dismiss that trial counsel failed to obtain the needed permission, we nevertheless conclude that the statements in the motion to dismiss do not articulate attorney dissatisfaction sufficient to trigger the district court's duty to inquire into a potential conflict of interest. This is especially true here, where Rodriguez fails to allege how the requested continuances prejudiced his defense.

Even if we had found that Rodriguez had met his burden by articulating a justifiable dissatisfaction with his attorney in the motion to dismiss, we note that the failure of a district court to inquire into a potential conflict entitles the defendant to dismissal only "if he or she can establish that the conflict significantly affected his or her counsel's performance, thereby rendering the verdict unreliable." *State v. Carter*, 284 Kan. 312, 321, 160 P.3d 457 (2007); see *State v. Galaviz*, 296 Kan. 168, 183-84, 291 P.3d 62 (2012). Here, Rodriguez has not alleged, let alone established, that counsel's failure to consult him about the multiple continuances "significantly affected" counsel's ability to defend him or rendered counsel's assistance ineffective. Even more basic, Rodriguez does not allege that he opposed the continuances—regardless of whether he was consulted—or that the continuances somehow constitute ineffective assistance of counsel. And finally, Rodriguez has not alleged that the verdict in this case was somehow unreliable based on the continuances themselves or counsel's failure to consult him about the continuances.

Based on the discussion above, we find none of the statements in Rodriguez' motion articulate attorney dissatisfaction sufficient to trigger the district court's duty to inquire into a potential conflict of interest. We further find that, even if the district court had a duty to inquire into a potential conflict of interest and failed to do so, Rodriguez is not entitled to dismissal as he requests because he has failed to allege, let alone establish, that the purported conflict significantly affected counsel's performance and thereby rendered the verdict unreliable. Because Rodriguez is unable to establish that Sedgwick County's practice related to pro se motions of defendants who are represented by counsel in criminal cases as applied to him violated his constitutional right of access to the courts, we conclude he has no standing for a facial attack on the constitutionality of the practice.

Affirmed.