NOT DESIGNATED FOR PUBLICATION

No. 124,476

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PHILIP JULYAN CALDWELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harvey District Court; JOE DICKINSON, judge. Opinion filed November 23, 2022. Convictions affirmed, sentence affirmed in part and vacated in part, and case remanded with directions.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MALONE, JJ.

PER CURIAM: Philip Julyan Caldwell appeals from his convictions for unlawful possession of methamphetamine with intent to distribute, unlawful possession of hydrocodone and morphine, and unlawful use of drug paraphernalia. He presents nine arguments including attacks on the sufficiency of the evidence and jury instruction error. Because the trial court's only nonharmless error was ordering a correctional supervision fee, we affirm Caldwell's convictions but vacate the correctional supervision fee.

1

On April 25, 2019, Caldwell was at the Happy Store gas station, in Newton, Kansas. Officer Gary Littlejohn of the Newton Police Department worked as a school resource officer. Dispatch told him that Caldwell, who had an active felony warrant, was walking the streets near his school. Littlejohn saw Caldwell walk into the gas station across the street. Littlejohn kept his eyes on Caldwell until other officers arrived. The gas station's surveillance camera footage showed Caldwell discreetly dropping a small black bag as soon as he noticed law enforcement outside the gas station.

Littlejohn walked into the gas station, arrested Caldwell on the outstanding warrant, and handed him off to Newton Police Officer Lucas Rindt. Then Littlejohn noticed the black nylon bag near where Caldwell had been standing. Inside the nylon bag, Littlejohn found a crystal-like substance and some unknown white pills. Caldwell saw Littlejohn pick up the bag and told Littlejohn that the bag was not his.

Rindt first instructed another officer to take Caldwell to jail and then searched the nylon bag. Inside, Rindt found crystal methamphetamine, hydrocodone pills, morphine pills, and a glass pipe which contained methamphetamine. Rindt testified that Caldwell had a larger amount of methamphetamine than for normal personal use and that he also had 14 empty plastic bags, which was not typical for normal personal use of methamphetamine.

Back at the police station, Detective Mitchell Nedrow helped Rindt with a more exhaustive inventory of the bag. Nedrow identified just under 20 grams of methamphetamine in total. He also determined that most of the pills were hydrocodone, except eight blue pills which were morphine. Nedrow testified that Caldwell was carrying enough methamphetamine to supply up to 28 people and the 14 empty plastic bags were likely for repackaging to distribute the drugs.

The officers sent the crystals, pills, and pipe to the Kansas Bureau of Investigation (KBI) for confirmation. KBI confirmed that the crystals in the bag and in the pipe were methamphetamine. KBI also confirmed that 78 white oblong pills and 13 other white pills were hydrocodone and 8 blue round tablets contained morphine.

At the jury instruction conference, Caldwell made one objection to the instruction on possessing methamphetamine with intent to distribute. He asserted that the trial court needed to instruct the jury on the lesser included offense of possession. Caldwell made no other objections to the jury instructions. The State asked the trial court to instruct the jury that Caldwell acted intentionally.

A jury found Caldwell guilty of possession of methamphetamine with the intent to distribute, in violation of K.S.A. 2018 Supp. 21-5705(a)(1), possession of methamphetamine, in violation of K.S.A. 2018 Supp. 21-5706(a), possession of hydrocodone, in violation of K.S.A. 2018 Supp. 21-5706(a), possession of morphine, in violation of K.S.A. 2018 Supp. 21-5706(a), and possession of drug paraphernalia, in violation of K.S.A. 2018 Supp. 21-5709(b)(2). The trial court sentenced Caldwell to 14 years, 1 month (169 months) in prison. The trial court's journal entry includes a correctional supervision fee of $120.

Caldwell timely appeals.

ANALYSIS

*Does the omission of an element in a jury instruction cause a structural error under section 5 of the Kansas Constitution Bill of Rights?*

Caldwell argues that the jury needed to find beyond a reasonable doubt that he knew that the substance he possessed was methamphetamine. He contends that failure to instruct the jury in this way violated his right to a jury trial under section 5 of the Kansas

Constitution Bill of Rights. Caldwell further contends that harmless error analysis does not apply to this section 5 violation. The State asserts (1) that Caldwell cannot raise the issue for the first time on appeal and (2) that harmless error does apply and that any error in instructing the jury was harmless.

Issues not raised before the trial court generally cannot be raised on appeal. See *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022).

Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Pearce*, 314 Kan. 475, 484, 500 P.3d 528 (2021).

There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) the consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the trial court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Caldwell concedes that he did not raise before the trial court whether the omission of an element in a jury instruction caused a structural error under section 5 of the Kansas Constitution Bill of Rights. But he contends that we can reach this issue because it involves only a question of law and is finally determinative of the case and because it is necessary to serve the ends of justice. Nevertheless, even when an exception may allow for review of an issue for the first time on appeal, our Supreme Court has considered and rejected application of the exception in *State v. Gray*, 311 Kan. 164, 459 P.3d 165 (2020). The *Gray* court established that application of exceptions is discretionary: "The decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, we have no obligation to do

4

so. [Citations omitted.]" 311 Kan. at 170; see also *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021) ("[A] 'decision to review an unpreserved claim under an exception is a prudential one.' Even if an exception may apply, we are under no obligation to review the claim. [Citations omitted.]").

Caldwell here failed to give the trial court an opportunity to rule on the issue because he raised it for the first time on appeal. Through his inaction at the trial level, Caldwell waived this argument. To credit the argument now we would endorse an unacceptable form of sandbagging. See *Finnegan v. Commissioner of Internal Revenue*, 926 F.3d 1261, 1272-73 (11th Cir. 2019) (characterizing raising new argument on appeal as sandbagging and declining to consider argument); *Raich v. Gonzales*, 500 F.3d 850, 868 n.18 (9th Cir. 2007).

Because of Caldwell's failures to provide factual, historical, or legal support for his argument, we decline to review this constitutional claim.

*Was the jury instruction for possession with intent to distribute methamphetamine clearly erroneous?*

Caldwell argues that the jury instruction for possession with the intent to distribute methamphetamine omitted an essential element, requiring reversal of his conviction. The State argues that the instruction was not error because it correctly defined "possession," or, alternatively, that any error was harmless.

When analyzing jury instruction issues, appellate courts follow a three-step process: (1) determining whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, in other words,

whether the error can be deemed harmless. *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021); see also K.S.A. 2021 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous.").

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. 313 Kan. at 255.

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 313 Kan. at 254. When a party fails to object to a jury instruction before the trial court, an appellate court reviews the instruction to determine if it was clearly erroneous. K.S.A. 2021 Supp. 22-3414(3). For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). If the challenging party preserved the issue below, an appellate court applies one of two harmless error tests. If the instructional error impacts a constitutional right, an appellate court assesses whether the error was harmless under the federal constitutional harmless error standard, that is, whether there was no reasonable possibility that the error contributed to the verdict. When no constitutional right is impacted, an appellate court assesses whether there is no reasonable probability the error affected the trial's outcome in light of the entire record. *Holley*, 313 Kan. at 256-57.

6

An appellate court exercises unlimited review when the gravamen of a defendant's complaint concerns a constitutional due process challenge. *State v. Wade*, 284 Kan. 527, 534, 161 P.3d 704 (2007). But see *State v. Williams*, 295 Kan. 506, 517, 286 P.3d 195 (2012) (characterizing an issue as a constitutional claim does not advance procedural posture when instruction was not requested below).

When the parties offer a variety of competing reasons why the requested instruction was or was not factually appropriate, the appellate court bypasses the third step of the analysis and moves straight to the harmlessness inquiry. Thus, the court will assume—without deciding—that when the evidence is viewed in the light most favorable to the defendant, it was sufficient for a rational fact-finder to find for the defendant on the requested lesser included offense, and proceed directly to determining whether the failure to give the instruction was harmless. *State v. Salary*, 301 Kan. 586, 598-99, 343 P.3d 1165 (2015).

When a party asserts an instruction error for the first time on appeal, the failure to give a legally and factually appropriate instruction is reversible only if the failure was clearly erroneous. *State v. Butler*, 307 Kan. 831, 845, 416 P.3d 116 (2018). The "'clearly erroneous'" principle is not a standard of review, that is, a framework for determining whether error occurred. Instead, it supplies a basis for determining if an error requires reversal of a conviction. *Williams*, 295 Kan. at 510; see *State v. Lewis*, 299 Kan. 828, 856, 326 P.3d 387 (2014).

Caldwell cites *State v. Rizal*, 310 Kan. 199, 208, 445 P.3d 734 (2019), holding that the State must show that the defendant knew the identity of the substance or that it was a controlled substance. He argues that the jury instructions were clearly erroneous. He contends that the instructions failed to tell the jury that a guilty verdict required a finding that Caldwell knew that the substance was methamphetamine or at least was a controlled

7

substance of some kind. He further argues that the instructions were clear error under K.S.A. 2021 Supp. 22-3414(3) and the error was not harmless.

Caldwell's argument fails because he misrepresents the jury instructions. He complains that Jury Instruction No. 9 failed to tell the jury that a guilty verdict required them to find that he knew that the substance was methamphetamine. The trial court instructed the jury using PIK Crim. 4th 57.020 definition of possession in Jury Instruction No. 9. PIK Crim. 4th 57.020 (2013) reads in part as follows: "'Possession' means having joint or exclusive control over an item [methamphetamine] with knowledge of and the intent to have such control or knowingly keeping some item [methamphetamine] in a place where the person has some measure of access and right of control."

And Jury Instruction No. 10 told the jury that they needed to find that Caldwell intended to possess methamphetamine before they could find him guilty. Jury Instruction No. 10 read as follows:

> "The State must prove that the Defendant committed the crime of possessing with the intent to distribute at least 3.5 grams but less than 100 grams of Methamphetamine intentionally.
> "A Defendant acts intentionally when it is the Defendant's desire or conscious objective to do the act complained about by the State."

Appellate courts consider jury instructions as a whole. *State v. Buck-Schrag*, 312 Kan. 540, 553, 477 P.3d 1013 (2020). Jury Instruction Nos. 9 and 10, read as a whole, simply do not contain the error that Caldwell complains of. Because the trial court instructed the jury that a guilty verdict required that Caldwell acted intentionally, we affirm.

*Was the instruction on the rebuttable presumption of distribution clearly erroneous?*

Caldwell argues that the trial court committed reversible error in instructing the jury on intent to distribute. The trial court told the jury that, if it found that Caldwell possessed more than 3.5 grams of methamphetamine, it could infer that he intended to distribute methamphetamine. The State concedes that our Supreme Court has held that the PIK instruction does not follow the language of the relevant statute and is therefore legally inappropriate. But the State argues that the instruction error was harmless.

The standard of review is the same as Caldwell's other claim of instructional error. We will reverse only for clear error. *Williams*, 295 Kan. at 516.

Caldwell objects to Jury Instruction No. 11, modeled on PIK Crim. 4th 57.022 (2013 Supp.), which states as follows:

> "If you find the Defendant possessed 3.5 grams or more of Methamphetamine, you may infer that the Defendant possessed with Intent to Distribute. You may consider the inference along with all the other evidence in the case. You may accept or reject it in determining whether the State has met the burden of proving the intent of the Defendant. This burden never shifts to the Defendant."

This pattern instruction cites K.S.A. 2021 Supp. 21-5705(e)(2), which states the following: "In any prosecution under this section, there shall be a rebuttable presumption of an intent to distribute if any person possesses . . . 3.5 grams or more of heroin or methamphetamine." Caldwell argues that Jury Instruction No. 11 is legally inappropriate because our Supreme Court found that the pattern instruction sets out a permissive inference, while the statute provides a rebuttable presumption. *State v. Holder*, 314 Kan. 799, 502 P.3d 1039 (2022).

9

In *Holder*, a jury convicted Dominic O'Shea Holder of possession with intent to distribute and conspiracy to distribute 44 pounds of marijuana. Holder presented our Supreme Court with the same argument that Caldwell makes here—the trial court erroneously instructed the jury that it could infer intent to distribute based on the amount of controlled substance. The *Holder* court reviewed the development of presumptions and inferences through both federal and Kansas precedents. *State v. Harkness*, 252 Kan. 510, Syl. ¶¶ 12-14, 847 P.2d 1191 (1993), helpfully provides a tiered list from strongest presumption to weakest inference:

> "A presumption may be either mandatory or rebuttable. A mandatory presumption removes the presumed element from the case because the State has proven the predicate facts giving rise to the presumption. That is, once the State proves certain facts, a jury must infer [the element] from such facts and the accused cannot rebut the inferences."
>
> "A rebuttable presumption does not remove the presumed element from the case but nevertheless requires the jury to find the presumed element unless the accused persuades the jury otherwise. That is, once the State proves certain facts, the jury must infer [the element] from those facts, unless the accused proves otherwise. . . ."
>
> "An instruction containing a permissive inference does not relieve the State of its burden because it still requires the State to convince the jury that an element, such as intent, should be inferred based on the facts proven."

The *Holder* court held that the instruction given was legally inappropriate. K.S.A. 2021 Supp. 21-5705(e) provided for a rebuttable presumption, meaning that "once the State proved possession of 450 grams or more of marijuana, the jury must infer Holder's intent to distribute unless he proved otherwise." *Holder*, 314 Kan at 805. But the instruction told the jury that they "may" infer an intent to distribute, allowed the jury to "accept or reject" the inference in determining whether the State had met its burden to show intent, and expressly rejected the notion that the defendant had a burden to prove otherwise. In short, the statute requires the jury to make a stronger presumption, which helps the State make its case and places some burden on the defendant. By contrast, the

10

instruction given in *Holder*—and here—allows the jury to infer or not infer an intent to distribute, which is less helpful to the State in making its case and does not impose a burden on the defendant. 314 Kan. at 807.

The *Holder* court held that the instruction was legally erroneous because it did not accurately reproduce the language of the statute. 314 Kan. at 806. When an instruction is identical to that used in *Holder*, it carries the same flaw and is legally inappropriate. *State v. Crudo*, 62 Kan. App. 2d 464, 481-82, 517 P.3d 857 (2022); *State v. Everett*, No. 124,321, 2022 WL 4281994, at *4 (Kan. App. 2022) (unpublished opinion). The trial court erred by giving an instruction that was incorrect on the law.

After determining that the jury was instructed in error, we next must analyze whether the error requires reversal. *Holley*, 313 Kan. at 253. Because Caldwell raises a claim of instructional error for the first time on appeal, we will apply a clear error standard to the question of harm.

The erroneous jury instruction contained a permissive inference, beneficial to Caldwell in comparison to the rebuttable presumption in K.S.A. 2021 Supp. 21-5705(e). If the court had properly instructed the jury following the language of the statute, then it would have applied the rebuttable presumption—once the State proved possession of 3.5 grams or more of methamphetamine, the jury would have had to infer that Caldwell had the intent to distribute, unless he produced evidence to show otherwise. See *Crudo*, 62 Kan. App. 2d at 482. But instead of telling the jury that it must presume intent to distribute based on the quantity of methamphetamine unless Caldwell proved otherwise, the trial court told the jury that it could accept or reject any inference of intent and that the burden never shifted from the State to the defendant. The effect of this error is that the State had a higher burden to produce evidence and persuade the jury than it would have had under K.S.A. 2021 Supp. 21-5705(e). If the jury found the evidence sufficient to convict Caldwell under a permissive inference, there is no reasonable probability that the

11

outcome would have been different if the State had a lower burden of proof under a rebuttable presumption. See *United States v. Pinson*, 542 F.3d 822, 832-33 (10th Cir. 2008) ("An incorrect instruction that is beneficial to the defendant is generally not considered prejudicial.").

Finally, even if we were to ignore the beneficial aspect of the instruction, we conclude there is no reasonable probability that the error affected the jury's verdict given the evidence, including the quantity and packaging of methamphetamine. The jury watched surveillance video of Caldwell dropping the bag containing enough methamphetamine for up to 14 people. Caldwell also had 14 empty plastic bags alongside the methamphetamine and other drugs. The jury would not have reached a different verdict even if they had been properly instructed under K.S.A. 2021 Supp. 21-5705(e). As a result, Caldwell's argument fails.

*Did the State need to present evidence that methamphetamine has a potential for abuse associated with a stimulant effect on the central nervous system?*

Caldwell attacks the severity level of his conviction for possession of methamphetamine with the intent to distribute. He argues that K.S.A. 2018 Supp. 21-5705(d)(3)(C) classifies the offense as a drug severity level 2 felony but requires an additional element which the State failed to prove. He asserts that subsection (d)(3)(C) required the State to prove that methamphetamine has a potential for abuse associated with a stimulant effect on the central nervous system. The State did not present evidence that methamphetamine has a potential for abuse, or that it affects the central nervous system. Thus, according to Caldwell, we should remand this matter to the trial court for him to be resentenced under K.S.A. 2018 Supp. 21-5705(d)(1)(B), which lists the offense as a drug severity level 3 felony. Our standard for review under a sufficiency of the evidence challenge is the following:

"'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Stoll*, 312 Kan. 726, 736, 480 P.3d 158 (2021).

Caldwell walks through the statutes step by step to arrive at the conclusion that he was not validly convicted of a severity level 2 drug felony. The key to his argument is a distinction between the use of "designated" versus "defined" in K.S.A. 2018 Supp. 21-5705. He begins with K.S.A. 2018 Supp. 21-5705(a)(1), which makes it a crime to possess with the intent to distribute ". . . any stimulant designated in subsection (d)(1), (d)(3) or (f)(1) of K.S.A. 65-4107, and amendments thereto." For purposes of this argument, Caldwell concedes that the State presented sufficient evidence that he possessed a stimulant "designated" in K.S.A. 65-4107 to convict him of possession with intent to distribute. K.S.A. 2018 Supp. 21-5705(a)(1). Then, Caldwell moves to the later subsections which specify the severity level of the crime.

K.S.A. 2018 Supp. 21-5705(d)(1) provides what can be considered the default severity levels. The relevant language here is the following: "Except as provided further, violation of subsection (a) is a: . . . (B) drug severity level 3 felony if the quantity of the material was at least 3.5 grams but less than 100 grams." Again, for purposes of this argument, Caldwell concedes that the State proved a stimulant under subsection (a)(1) and the relevant weight under subsection (d)(1)(B). Thus, Caldwell concedes that the State's evidence could have resulted in his conviction for a level 3 drug felony under K.S.A. 2018 Supp. 21-5705(d)(1)(B).

13

But Caldwell's conviction is a level 2 drug felony under an exception, and this is where Caldwell takes issue. The relevant language from K.S.A. 2018 Supp. 21-5705(d)(3)(C) is the following:

> "(3) Violation of subsection (a) with respect to material containing any quantity of . . . methamphetamine, as defined by subsection (d)(3) or (f)(1) of K.S.A. 65-4107, and amendments thereto, or an analog thereof, is a:
>
> . . . .
>
> "(C) drug severity level 2 felony if the quantity of the material was at least 3.5 grams but less than 100 grams."

Caldwell notices that this subsection uses the word "defined" whereas subsection (a)(1) uses the word "designated." Caldwell then looks to K.S.A. 65-4107(d)(3) to find a definition. And K.S.A. 65-4107(d)(3) states, in its entirety: "Methamphetamine, including its salts, isomers and salts of isomers," followed by the Drug Enforcement Agency (DEA) code of 1105 for methamphetamine.

Caldwell argues that the statutes contain a linguistic mismatch. K.S.A. 2018 Supp. 21-5705(d)(3)(C) says "methamphetamine, as defined by [K.S.A. 65-4107(d)(3)]," but then K.S.A. 65-4107(d)(3) simply lists methamphetamine. "We all remember from elementary school that you cannot define any word by using that same word," argues Caldwell. Thus, Caldwell looks for and finds a definition of methamphetamine in the text of the subsection heading. K.S.A. 65-4107(d) states the following: "Any material, compound, mixture, or preparation which contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system." Caldwell concludes that this text must be the definition of methamphetamine required by K.S.A. 2018 Supp. 21-5705(d)(3)(C).

Caldwell argues that because our Legislature made it a crime to possess methamphetamine that has "a potential for abuse associated with a stimulant effect on the

14

central nervous system," then the State needed to prove to the jury that the methamphetamine Caldwell possessed fit that definition. Caldwell notes that the State did not present evidence to the jury that he possessed a substance having a potential for abuse associated with a stimulant effect on the central nervous system. Thus, he asserts that the State did not provide sufficient evidence to convict him of the level 2 drug felony because it did not show "methamphetamine, as defined by [K.S.A. 65-4107(d)(3)]," as required by K.S.A. 2018 21-5705(d)(3)(C).

And Caldwell distinguishes his argument from *State v. Lynn*, No. 98,346, 2008 WL 4291520, at *6 (Kan. App. 2008) (unpublished opinion). After Teresa Lynn's conviction for possession of methamphetamine, she made the nearly identical argument that the State did not obtain a valid conviction because it failed to prove that methamphetamine is a substance "'*having a potential for abuse associated with a stimulant effect on the central nervous system*.'" 2008 WL 4291520, at *6. This court held that the State need not prove that methamphetamine has such a potential for abuse associated with a stimulant effect on the central nervous system to secure a valid conviction. This court stated that "[t]he language in K.S.A. 65-4107(d) is a categorical heading and not an added element in the statute criminalizing the possession of the drug." 2008 WL 4291520, at *6.

But Caldwell places his emphasis on the difference between "designate" and "define." The statute at issue in *Lynn* criminalized methamphetamine as "designated" by K.S.A. 65-4107(d)(3). And Caldwell concedes the same result under the language of K.S.A. 2018 Supp. 21-5705(a)(1) which criminalizes methamphetamine as "designated" by K.S.A. 65-4107(d)(3). But he argues that our Legislature must have intended a different result when it used different wording, requiring that to raise the severity level at K.S.A. 2018 Supp. 21-5705(d)(3)(C), the State must prove possession of methamphetamine as "defined" by K.S.A. 65-4107(d)(3). Caldwell argues that, by

picking a different word than the one at issue in *Lynn*, our Legislature must have contemplated a different result.

Assuming without deciding that Caldwell's reading is correct, his argument nevertheless fails a basic logic check. Even if he is correct that our Legislature intended for K.S.A. 65-4107 to be a definition, it does not follow that the State would separately need to prove this definition. Our Legislature defined methamphetamine as a substance "having a potential for abuse associated with a stimulant effect on the central nervous system." K.S.A. 65-4107(d)(3). If the State proves that the drug is methamphetamine beyond a reasonable doubt to a jury, then it also proves the drug or substance has the potential for abuse associated with a stimulant effect on the central nervous system.

As the *Lynn* court stated: "K.S.A. 65-4107(b)-(g) organize the controlled substances listed in schedule II into categories of drugs with similar characteristics." 2008 WL 4291520, at *6. The *Lynn* court accurately described the relevant language as "a categorical heading." 2008 WL 4291520, at *6.

In this case, Caldwell's confusion seems to stem from the wordiness of K.S.A. 65-4107(d). He seemingly misreads the definition. He walks through the relevant statutory provisions and arrives at the conclusion that K.S.A. 65-4107(d) is a definition. And he argues that the State must prove that the substance meets that definition. Even if we were to accept Caldwell's introductory steps as valid, which we do not, the State has met its burden. Based on K.S.A. 65-4107(d)(3), methamphetamine, including its salts, isomers, and salts of isomers, is a substance having a potential for abuse associated with a stimulant effect on the central nervous system.

To illustrate, K.S.A. 65-4107(d)(3) is a descriptive definition that enumerates the characteristics of controlled substances included in schedule II offenses. Subsection (d)(3) states the following: "(d) Any material, compound, mixture, or preparation which

16

contains any quantity of the following substances having a potential for abuse associated with a stimulant effect on the central nervous system: . . . (3) Methamphetamine, including its salts, isomers and salts of isomers[,]" is a schedule II controlled substance (the possession of which is a schedule II offense).

This statutory construction of K.S.A. 65-4107(d)(3) can be vividly illustrated by the following categorical syllogism:

Major premise: Possession of any material, compound, mixture, or preparation which contains any quantity of the following substances under (d) [(1) Amphetamine; (2) Phenmetrazine; (3) Methamphetamine; (4) Methylphenidate; and (5) Lisdexamfetamine] having a potential for abuse associated with a stimulant effect on the central nervous system is a schedule II offense.

Minor premise: Methamphetamine, including its salts, isomers and salts of isomers, is a substance under (d)(3) having a potential for abuse associated with a stimulant effect on the central nervous system.

Conclusion: Therefore, possession of methamphetamine is a schedule II offense.

Here, because the jury found beyond a reasonable doubt that the substance Caldwell possessed was methamphetamine, then it also found that the substance had a potential for abuse associated with a stimulant effect on the central nervous system. Because the State met its burden to prove all the elements of the offense, we affirm Caldwell's conviction.

17

*Is possession of hydrocodone and morphine illegal in Kansas?*

Caldwell argues that there is a mismatch between the charging document and the jury instructions on the one hand and K.S.A. 2018 Supp. 21-5706(a) on the other hand. K.S.A. 2018 Supp. 21-5706(a) makes it a crime to possess "any opiates, opium or narcotic drugs," but does not include hydrocodone and morphine in its text. He argues that because the State failed to show that hydrocodone and morphine are opiates, opium, or narcotics that his conviction for possession lacks evidentiary support. Because the record shows that the State did present evidence that hydrocodone and morphine are narcotics, we affirm Caldwell's conviction.

Caldwell presents a similar argument of insufficient evidence and statutory interpretation as he did with his claim about methamphetamine's definition. But here he has an astute observation about what is present and what is missing from the text of K.S.A. 2018 Supp. 21-5706(a). K.S.A. 2018 Supp. 21-5706(a) states, in its entirety, as follows: "It shall be unlawful for any person to possess any opiates, opium or narcotic drugs, or any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3) or (f)(1), and amendments thereto, or a controlled substance analog thereof."

The State charged Caldwell with possessing hydrocodone and morphine, which are not listed in the text of K.S.A. 2018 Supp. 21-5706(a). Caldwell argues that something, some law or fact, must connect hydrocodone and morphine to one of the listed categories in K.S.A. 2018 Supp. 21-5706(a). Caldwell notes that nothing in the statute connects hydrocodone and morphine to these categories, so he argues that the State bears the evidentiary burden to show factually that hydrocodone and morphine are opiates, opium, or narcotics.

Caldwell makes a fair point about the drafting of K.S.A. 21-5706. The phrase "opiates, opium or narcotic drugs" is the only group without a reference to the Uniform

18

Controlled Substances Act, K.S.A. 65-4101 et seq. Caldwell notes that K.S.A. 2018 Supp. 21-5706(a) makes it unlawful for any person to possess any stimulant designated in K.S.A. 65-4107(d)(1), (d)(3), or (f)(1), which lists amphetamine, methamphetamine, and their precursors. Similarly, K.S.A. 2018 Supp. 21-5706(b)(1)-(7) all include cross-references. For example, under (b)(1) it is unlawful to possess "[a]ny depressant designated in K.S.A. 65-4105(e). . . ." No such citation exists for "opiates, opium or narcotic drugs" in K.S.A. 2018 Supp. 21-5706(a).

Because K.S.A. 2018 Supp. 21-5706(a) does not designate a list of opiates, opium, or narcotic drugs, Caldwell turns to another section of the Kansas Criminal Code. K.S.A. 2018 Supp. 21-5701(l) defines "narcotic drug" as follows:

> "[A]ny of the following whether produced directly or indirectly by extraction from substances of vegetable origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis:
>
> (1) Opium and opiate and any salt, compound, derivative or preparation of opium or opiate;
>
> (2) any salt, compound, isomer, derivative or preparation thereof which is chemically equivalent or identical with any of the substances referred to in paragraph (1), but not including the isoquinoline alkaloids of opium;
>
> (3) opium poppy and poppy straw;
>
> (4) coca leaves and any salt, compound, derivative or preparation of coca leaves and any salt, compound, isomer, derivative or preparation thereof which is chemically equivalent or identical with any of these substances, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine."

This definition includes no reference to any provision of the Uniform Controlled Substances Act. Also, this definition creates a slight redundancy. K.S.A 2018 Supp. 21-5706(a) criminalizes "opiates, opium or narcotic drugs," but the definition of narcotic drugs at K.S.A. 2018 Supp. 21-5701(l) already includes opiates and opium.

K.S.A. 2018 Supp. 21-5701(m) defines "opiate" as "any substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having addiction-forming or addiction-sustaining liability." And K.S.A. 2018 Supp. 21-5701(m) exempts dextromethorphan from the definition of "opiate," unless the Kansas Board of Pharmacy follows the procedure at K.S.A. 65-4102 to change its designation. "Opium poppy" means the plant Papaver somniferum l. except its seeds under K.S.A. 2018 Supp. 21-5701(n). But "opium" has no definition.

In short, K.S.A. 65-4107(b)(1) lists opium and opiates, including hydrocodone and morphine, but nothing in the statute criminalizing possession points to that list. K.S.A. 2018 Supp. 21-5706 criminalizes possession of "opiates, opium or narcotic drugs" without a cross-reference. From this, Caldwell argues that the lack of legal classification creates a fact question of classification. Caldwell contends that the State must produce evidence at trial that hydrocodone and morphine are substances criminalized under K.S.A. 2018 Supp. 21-5706(a), that is, opiates, opium, or narcotics. And K.S.A. 2018 Supp. 21-5706(a) does not state that it is unlawful to possess "controlled substances," which could serve as catch-all language if it existed.

Caldwell presents an interesting question of statutory interpretation. But we need not further address this question based on Caldwell's contention that the State needed to present evidence that hydrocodone and morphine are opiates, opium, or narcotics. And he further asserts that the State failed to present any such evidence. Caldwell's contention is factually inaccurate. The State presented law enforcement testimony to the jury. Officer Nedrow testified that hydrocodone and morphine are "Schedule II narcotics." Even if the language of K.S.A. 2018 Supp. 21-5706(a) requires the State to show that the drugs are narcotics, the State presented evidence in this case that hydrocodone and morphine are narcotics. As a result, Caldwell's argument fails.

20

*Did the trial court err in instructing the jury on unlawful possession of hydrocodone and morphine?*

Caldwell argues that the trial court improperly instructed the jury because K.S.A. 2018 Supp. 21-5706(a) criminalizes possessing "opiates, opium or narcotic drugs," not controlled substances, hydrocodone, or morphine. He asserts that the instructions were clearly erroneous and warrant reversal. The State, however, argues that the instructions were legally appropriate or, alternatively, that any error was harmless.

Caldwell challenges Jury Instructions Nos. 16 and 18. Both instructions are modeled on PIK Crim. 4th 57.040 (2020 Supp.), which cites K.S.A. 21-5706(a) as its authority. Jury Instruction No. 16 reads as follows:

"In Count 3, the Defendant is charged with Possessing a Controlled Substance—Hydrocodone. The Defendant pleads Not Guilty.
"To establish this charge, each of the following claims must be proved:
1. The Defendant is [*sic*] unlawfully possessed Hydrocodone.
2. This act occurred on or about the 25th day of April, 2019, in Harvey County, Kansas."

Jury Instruction No. 18 reads as follows:

"In Count 4, the Defendant is charged with Possessing a Controlled Substance—Morphine. The Defendant pleads Not Guilty.
"To establish this charge, each of the following claims must be proved:
1. The Defendant unlawfully possessed Morphine.
2. This act occurred on or about the 25th day of April, 2019, in Harvey County, Kansas."

The instructions also defined possession and instructed the jury that both crimes had to be committed intentionally. Instructions 17 and 19 contained a definition of intentionally with respect to each charge.

Caldwell points out that the jury instructions do not include the words "opiates," "opium," or "narcotic drugs" from K.S.A. 2018 Supp. 21-5706(a). Caldwell argues that the absence of these terms is clear error. Caldwell asserts that if the jury was instructed that hydrocodone and morphine had to be opiates, opium, or narcotic drugs under K.S.A. 2018 Supp. 21-5706, then the jury would have acquitted for insufficient evidence.

Caldwell's argument on jury instructions fails for the same reason as his insufficient evidence claim. He misreads the record. The State did present evidence to the jury that hydrocodone is a narcotic, and the State presented evidence that morphine is a narcotic. For a jury instruction to be clearly erroneous, the court must be firmly convinced that the jury would have reached a different verdict if the erroneous instruction had not been given. *Crosby*, 312 Kan. at 639. If the trial court instructed the jury that they needed to find that the substances were "opiates, opium or narcotic drugs" under K.S.A. 2018 Supp. 21-5706(a), then the jury's verdict would have been the same. Thus, we conclude that Caldwell's argument is fatally flawed.

*Did the trial court err by failing to instruct on the lesser included offenses for methamphetamine possession?*

Caldwell argues that the trial court erred by only instructing the jury on possession of between 3.5 and 100 grams of methamphetamine with intent to distribute. He asserts that the lesser included instructions for possessing smaller amounts of methamphetamine were legally and factually appropriate. Because he did not request the instructions or object to their omission at trial, we review the instructions for clear error. K.S.A. 2021 Supp. 22-3414(3).

Under K.S.A. 2021 Supp. 21-5109(b)(1), a crime is a lesser included crime if it is "[a] lesser degree of the same crime." An instruction on a lesser included crime is legally appropriate.

For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. *Crosby*, 312 Kan. at 639.

Caldwell makes no substantial argument for how the lesser included instructions could be factually appropriate. The jury convicted Caldwell under K.S.A. 2018 Supp. 21-5705(d)(3)(C), for a quantity of at least 3.5 grams but less than 100 grams of methamphetamine. The lesser degrees of the same crime are K.S.A. 2018 Supp. 21-5705(d)(3)(B), possession with intent to distribute at least 1 gram but less than 3.5 grams of methamphetamine, and K.S.A. 2018 Supp. 21-5705(d)(3)(A), possession with intent to distribute less than 1 gram. Caldwell simply asserts that these lesser included instructions were factually appropriate because if he possessed more than 3.5 grams, then he necessarily possessed 1 gram or less also, citing *State v. Scheuerman*, 314 Kan. 583, 591, 502 P.3d 502 (2022).

But this court recently rejected the same argument in *Everett*, 2022 WL 4281994, at *7. Jeffry Albert Everett also argued that the trial court erred by not giving lesser included offense instructions for possession of less than 3.5 grams of methamphetamine. This court rejected Everett's citation to *Scheuerman*, noting that *Scheuerman* was a sufficiency of the evidence challenge, not related to jury instructions. Jury instructions were not at issue because the trial court convicted Scheuerman after a bench trial on stipulated facts. Scheuerman stipulated to possessing more than 3.5 grams of methamphetamine, which the *Scheuerman* court held was sufficient evidence to convict Scheuerman of possessing less than 3.5 grams. This court rejected Everett's citation to

*Scheuerman* because the holding did not apply to jury instruction questions. The *Everett* court quoted *Scheuerman*'s holding that "'the test for the sufficiency of the evidence to support a conviction is distinct from—although related to—the "factual appropriateness" test for the giving of lesser included offense instructions.'" *Everett*, 2022 WL 4281994, at *7 (quoting *Scheuerman*, 314 Kan. at 592).

Like *Everett*, we reject Caldwell's argument that *Scheuerman* applies to jury instructions. The more appropriate comparison is to *State v. Valdez*, 316 Kan. 1, 512 P.3d 1125 (2022), in which our Supreme Court held that lesser included instructions would have been factually appropriate. But Joseph Miguel Valdez had 1 gram of methamphetamine in his jeans pocket while the rest of the methamphetamine was in multiple packets inside a sunglasses case. "The jury could have concluded Valdez possessed only the 1-gram packet." 316 Kan. at 16. Here, the evidence established that Caldwell possessed 19.9 grams of methamphetamine. Caldwell dropped one black bag on the floor of the convenience store, which police officers picked up. All the methamphetamine was in that one bag. If Caldwell possessed the bag, then he possessed all the methamphetamine in it. No reasonable jury would have found that he intended to possess some lesser amount. Because the trial court did not err by omitting lesser included offense instructions, we affirm.

*Did cumulative error deny Caldwell his right to a fair trial?*

Caldwell asserts that cumulative error deprived him of his right to a fair trial.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in context and consider how the trial judge dealt with the errors as they arose; the nature and

24

number of errors and whether they are interrelated; and the overall strength of the evidence. If any of the errors being aggregated are constitutional in nature, the party benefitting from the error must establish beyond a reasonable doubt that the cumulative effect did not affect the outcome. *State v. Alfaro-Valleda*, 314 Kan. 526, 551-52, 502 P.3d 66 (2022).

The trial court erred when it allowed the jury to infer from the amount of methamphetamine that Caldwell intended to distribute. But this error was harmless because the correct statutory language would have been more favorable to the State and would have shifted the burden of proof to Caldwell. And, assuming without deciding that the trial court erred by omitting the words "opiates," "opium," or "narcotic drugs" from the instructions for hydrocodone and morphine, such error was also harmless. Even if the trial court erred, this error was not interrelated with the permissive inference instruction error. Both errors, counted together, would not undermine the strength of the evidence that Caldwell possessed methamphetamine and narcotics. Any errors made by the trial court did not accumulate to deprive Caldwell of a fair trial.

*Did the trial court err in ordering a correctional supervision fee?*

Caldwell argues that the trial court erred by ordering a correctional supervision fee. The State concedes this is error. Both parties agree that the appropriate remedy is a nunc pro tunc order correcting the error. Because the fee is erroneous, we vacate that portion of the journal entry.

Appellate courts have unlimited review over whether an order is subject to correction by an order nunc pro tunc. *State v. Fields*, No. 97,292, 2008 WL 307680, at *3 (Kan. 2008) (unpublished opinion) (citing *State v. Vanwey*, 262 Kan. 524, 527, 941 P.2d 365 [1997]).

Under K.S.A. 2021 Supp. 21-6607(c)(3)(A), a correctional supervision fee applies only when a trial court places a defendant on probation, grants a suspended sentence, or assigns him to a community correctional service program. Because the trial court sentenced Caldwell to prison, it erred in ordering a correctional supervision fee. The trial court ordered a fee which it had no authority to order and no remedy is possible except to vacate that part of the judgment. See *State v. Becker*, 311 Kan. 176, 191, 459 P.3d 173 (2020) (vacating lifetime postrelease supervision which the trial court had no authority to impose, without the need for further proceedings); but see *State v. Potts*, 304 Kan. 687, 709, 374 P.3d 639 (2016) (holding that a nunc pro tunc order was inappropriate and a remand was necessary to change lifetime postrelease supervision to 36 months of postrelease supervision). A journal entry of judgment may be corrected at any time by a nunc pro tunc order, which is appropriate for correcting clerical errors arising from oversight or omission. See K.S.A. 2021 Supp. 22-3504(b); *Potts*, 304 Kan. at 708. Because the trial court mistakenly ordered Caldwell to pay a $120 correctional fee, we vacate that portion of the journal entry.

For the preceding reasons, we affirm the trial court on all issues except its entry of the correctional supervision fee. We vacate the supervision fee, instructing the trial court to enter a nunc pro tunc order to correct this error.

Convictions affirmed, sentence affirmed in part and vacated in part, and case remanded with directions.